IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-142-FL

| | | |
|---|---|---|
| DYNATEMP INTERNATIONAL, INC.; | ) | |
| FLUOROFUSION SPECIALTY | ) | |
| CHEMICALS, INC.; HAROLD B. | ) | |
| KIVLAN, IV; WILLIAM GRESHAM; | ) | |
| and DAVID COUCHOT, | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| R421A, LLC; RMS OF GEORGIA, LLC, | ) | |
| d/b/a Choice Refrigerants; KENNETH M. | ) | |
| PONDER; and LENZ SALES & | ) | |
| DISTRIBUTING, INC., | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on motion for preliminary injunction filed by R421A, LLC (DE 64); partial motion to dismiss filed by Dynatemp International, Inc. ("Dynatemp") (DE 100); and motion to dismiss filed Fluorofusion Specialty Chemicals ("Fluorofusion") (DE 101). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, the motion for preliminary injunction is denied, Dynatemp's partial motion to dismiss is granted in part and denied in part as moot, Fluorofusion's motion to dismiss is granted in part and denied in part as moot.[2]

---

[1] Per the court's February 10, 2021, order, the court constructively amends its case caption to reflect designation of R421A, LLC as a defendant and Harold B. Kivlan, IV, William Gresham, and David Couchot as plaintiffs. The court also amends its case caption to show that Dynatemp International, Inc. and Fluorofusion Specialty Chemicals, Inc. added Kenneth M. Ponder as a defendant in second amended complaint on April 14, 2021.

[2] Also pending are motions to seal (DE 90, 98), which are granted as set forth herein.

## STATEMENT OF THE CASE

Dynatemp and Fluorofusion commenced this action concerning refrigerant products on April 6, 2020, against RMS. They filed an amended complaint on September 25, 2020, joining Lenz Sales and Distributing, Inc. ("Lenz"), as a defendant, and asserting jointly claims for false advertising, common law unfair competition, and unfair and deceptive trade practices; and asserting solely on behalf of Dynatemp claims for defamation, tortious interference with prospective economic advantage, breach of contract, and unjust enrichment.[3] RMS answered the amended complaint, and filed amended counterclaims on December 11, 2020, for passing off and unfair competition, false advertising, common law unfair competition, tortious interference with prospective economic advantage, and unfair and deceptive trade practices against Dynatemp and Fluorofusion.

Two days after the instant action commenced, R421A, LLC instituted related action 5:20-CV-147-FL (the "147 case"), and filed amended complaint on July 27, 2020, against Dynatemp; Fluorofusion; Harold B. Kivlan, IV ("Kivlan"), chief executive officer and chief financial officer of Dynatemp and officer of Fluorofusion; William Gresham ("Gresham"), vice president of Dynatemp; and David Couchot ("Couchot"), president of Fluorofusion (collectively the "Dynatemp and Fluorofusion parties"),[4] asserting claims for patent infringement, induced infringement, and contributory infringement, in violation of 35 U.S.C. § 271(a), (b), and (c), respectively.[5] Thereafter,

---

[3] On April 14, 2021, Dynatemp and Fluorofusion filed the operative second amended complaint, joining Kenneth M. Ponder, who is the owner and president of RMS and president of R421A LLC, as a defendant and asserting the same claims that were asserted in the first amended complaint.

[4] R421A, LLC's original complaint named T.T International Co., Ltd; BMP USA, Inc.; and IGAS USA, Inc. as defendants, but these parties were not named in the amended complaint. R421A, LLC did not file a proposed summons for T.T. International Co., Ltd, so the clerk's office did not issue any summons to be served upon T.T. International Co., Ltd. On August 11, 2020, R421A, LLC entered a joint stipulation of dismissal with BMP USA, Inc. and IGAS USA, Inc., dismissing without prejudice all claims against those parties.

[5] With leave of court, on April 22, 2021, R421A, LLC filed the operative second amended complaint, joining RMS as a co-plaintiff, and asserting the same claims that were asserted in first amended complaint.

Case 5:20-cv-00142-FL   Document 169   Filed 07/30/21   Page 2 of 29

Dynatemp and Fluorofusion asserted declaratory judgment counterclaims against R421A, LLC, seeking declarations that the patents at issue are invalid and that neither Dynatemp nor Fluorofusion has infringed, induced infringement, or contributed to the infringement of those patents.

Upon the parties' joint proposals, the court entered case management order on October 23, 2020, consolidating the two cases, designating the instant action as the repository for filings, and directing the clerk to administratively close the case file in the 147 case.[6]

Approximately one week later, R421A, LLC filed the instant motion for preliminary injunction, seeking to enjoin the Dynatemp and Fluorofusion parties as well as their privies, "from making, offering for sale, or selling R421A, LLC refrigerant in the United States, or importing R421A, LLC refrigerant into the United States until a trial on the merits." (Mot. (DE 64) at 1-2). R421A, LLC relies upon a memorandum in support and numerous exhibits, including: 1) declaration of Kenneth M. Ponder ("Ponder"); 2) a letter to Ponder, dated September 8, 2009, announcing receipt of an award; 3) U.S. Patent No. 10,703,949 ("'949 Patent") and associated claim chart; 4) U.S. Patent No. 8,197,706 ("'706 patent") and associated claim chart; 5) printout from the Kivlan Group's website; 6) Dynatemp's "Late Summer Refrigerant Industry Update"; 7) January 26, 2015, article in HVAC Refrigeration Daily; 8) product listing on Dynatemp's website; 9) Dynatemp's safety data sheet; 10) "SNAP" application filed with the Environmental Protection Agency ("EPA"); 11) a picture of Dynatemp's product cannister;  12) a statement authored by Gresham; 13) pictures of Johnstone Supply's website; 14) picture of Southern Pipe & Supply's website; and 15) Dynatemp and Fluorofusion's first amended complaint.

---

[6]     On February 10, 2021, the court directed the clerk to refile notices of appearances from the administratively closed 147 case as active documents in this lead case.  (Order (DE 111) at 1).  Moreover, solely for purposes of administration of the docket, and to ensure that all parties were actively displayed on the face of the docket and order captions, the court designated certain parties as plaintiffs and defendants, to reflect the alignment recognized in the court's October 23, 2020, consolidation order.  (See id.).

3

The Dynatemp and Fluorofusion parties responded in opposition on December 15, 2020, relying upon 1) declaration of Kivlan; 2) select discovery responses from R421A, LLC; 3) petition for inter partes review of U.S. Patent No. 9,982,179, ("'179 Patent"), related exhibits, and declaration of Dr. Eckhart Groll ("Groll") in support; 4) petition for post grant review of '949 Patent, related exhibits, and Groll's supporting declaration; 5) petition for inter partes review of '706 Patent, related exhibits, and Groll's supporting declaration; 6) press release entitled "U.S. Refrigerant Market Notice: Beware Counterfeit Versions of Choice® R421A"; 7) R421A, LLC's articles of incorporation and certificate of organization; 8) RMS's certificate of organization; 9) RMS's certificate of name change by amendment; 10) R421A, LLC's disclosure of asserted claims and preliminary infringement contentions; and 11) document disclosing royalty payments from RMS to R421A, LLC. Thereafter, the Dynatemp and Fluorofusion parties filed the instant motion to seal portions of their response, as well as declaration of Kivlan, and RMS and R421A, LLC filed the instant motion to seal a document disclosing royalty payments, which was filed as an exhibit in support of the Dynatemp and Fluorofusion parties' response in opposition.

R421A, LLC replied in support of its motion on February 2, 2021, relying upon 1) "Patent Owner's Preliminary Response", filed with Patent Trial and Appeal Board ("PTAB"), by R421A, LLC; 2) screenshots of Dynatemp's and FluoroFusion's websites; 3) U.S. Patent No. 6,863,840; and 4) "Notice of Allowance and Fee(s) Due" issued by the in the United States Patent and Trademark Office ("USPTO").

In the meantime, on January 6, 2021, Dynatemp filed the instant partial motion to dismiss RMS's amended counterclaims[7] for passing off, reverse passing off, and unfair competition. That

---

[7]     RMS voluntarily withdrew its claims of trade dress and trademark infringement, as well as its claim for dilution, in its amended counterclaims. (Mot. (DE 71) ¶ 7).

4

same day, Fluorofusion filed the instant motion to dismiss RMS's amended counterclaims for false advertising, tortious interference with prospective economic advantage, and unfair and deceptive trade practices, as well as the counterclaims addressed by Dynatemp's partial motion to dismiss. RMS responded in opposition to the motions to dismiss on February 5, 2021. Dynatemp and Fluorofusion replied in support of their motions on February 19, 2021.

On April 22, 2021, R421A, LLC filed notice of suggestion of subsequently controlling decided authority, attaching the April 20, 2021, decision of the PTAB, denying Dynatemp and Fluorofusion's petition for inter partes review of '179 Patent. Shortly thereafter, the court allowed the parties to file supplemental briefing on the effect of the PTAB's April 20, 2021, decision, on the instant litigation. The Dynatemp and Fluorofusion parties filed their supplemental brief June 1, 2021, relying upon: 1) Dynatemp and Fluorofusion's reply brief filed with the PTAB; 2) R421A, LLC's sur-reply brief filed with the PTAB; 3) PTAB's order dismissing petition for post grant review of '949 Patent; and 4) PTAB's order dismissing petition for inter partes review of '706 Patent. Two weeks later, R421A, LLC responded to the Dynatemp and Fluorofusion parties' supplemental brief.[8]

## STATEMENT OF FACTS

The facts alleged in RMS's amended counterclaims, and attachments thereto, may be summarized as follows.[9]

A.     The Development of R-421A

---

[8]     The parties filed opening and responsive claim construction briefs, along with a revised joint claim construction statement and joint report on claim construction hearing, which will be addressed by separate order. In addition, R421A, LLC and RMS filed motion to strike portions of the Dynatemp and Fluorofusion parties' responsive claim construction brief on July 27, 2021, which is not yet ripe.

[9]     These facts are summarized for purposes of background for the motions to dismiss. Further facts will be set forth herein for purposes of the motion for preliminary injunction.

5

RMS, an innovator of heating, ventilation, and air conditioning products, holds an exclusive license from R421A, LLC to "make, have made, import, offer to sell and sell a refrigerant product known as R-421A", which is covered by several patents owned by R421A, LLC. (Am. Counterclaims (DE 79) ¶¶ 7-8). Specifically, R421A, LLC has been assigned the following patents for R421A: 1) '179 Patent; 2) '706 Patent; and 3) '949 Patent. (Id. ¶ 20).

R-421A is used as a substitute and retrofit for an older refrigerant, chlorodifluoromethane, commonly known as R-22 or Freon. (Id. ¶¶ 9, 21). Because R-22 depleted the global ozone layer, the EPA banned the production and import of R-22 in the United States as of January 1, 2020, pursuant to the Clean Air Act. (Id. ¶¶ 10-11). Anticipating the R-22 ban, R421A, LLC's predecessors in interest developed a new, more ozone-friendly, refrigerant, and upon RMS's application, the American Society of Heating, Refrigerating, Air Conditioning Engineers ("ASHRAE") approved the new refrigerant, giving it the designation R-421A. (Id. ¶¶ 12-13, 22). The EPA also granted approval of R-421A as a substitute for R-22, under its Significant New Alternatives Policy ("SNAP") program. (Id. ¶ 15).

According to RMS, in order for a refrigerant to be referred to as R-421A, in accordance with ASHRAE's designation, it must constitute a blend of refrigerant gases comprising 58 percent, plus or minus one percent, pentafluoroethane ("R-125"), and 42 percent, plus or minus one percent, tetrafluoroethane ("R-134a"), wherein the combined weights of R-125 and R-134a total one hundred percent. (Id. ¶ 17). Moreover, RMS alleges that a refrigerant may contain certain additives, such as a lubricating oil, a corrosive inhibitor, a surfactant, or a foaming agent, but these additives are not considered in determining whether a refrigerant product meets the R-421A designation. (Id. ¶ 18).

B.    Relationship between RMS and Dynatemp

In or around 2012, RMS and Dynatemp commenced a multi-year distribution relationship, whereby Dynatemp served as a reseller and/or distributor for R-421A in the United States. (Id. ¶ 23). Approximately seven years later, Kivlan, chief executive officer and chief financial officer of Dynatemp and officer of Fluorofusion, as well as Couchot, the president of Fluorofusion, met with Ponder, the president of RMS, in October 2019. (Id. ¶¶ 27-28, 37). During the meeting, Couchot allegedly took the lead in demanding a renegotiation of the distribution agreement between RMS and Dynatemp, stating: "We are going to make your product and pay you a royalty." (Id. ¶ 28). Ponder interpreted Couchot's statement as a demand that Dynatemp and Fluorofusion be granted a license under the patents covering R421A, on terms that were allegedly much more favorable to Dynatemp. (Id.). Shortly thereafter, RMS ceased selling its R-421A product to Dynatemp, and began engaging with one or more different distributors. (Id. ¶ 30). On February 25, 2020, Couchot allegedly reiterated his demands in email to RMS, sent on behalf of Fluorofusion and Dynatemp, which stated: "Let me know if you want to get together and try to work something out because continuing down this path only opens you up to the Chinese coming after you next and this is not in anyone's best interest." (Id. ¶ 29).

C.     Dynatemp's R421A Product

After RMS terminated Dynatemp as a distributor, Dynatemp and Fluorofusion began blending and marketing a product named "Dynatemp R421A" for sale and selling the same in the United States refrigerant market, allegedly as a replacement for, and in direct competition with, RMS's refrigerant product, without authorization or permission from RMS or R421A, LLC. (Id. ¶¶ 31, 33). According to RMS, Fluorofusion orders, combines, blends, and or packages the Dynatemp R421A product and supplies it to Dynatemp in cannister, knowing and intending that it will be offered, promoted and sold as an alternative to and in direct competition with RMS's R421A product. (Id. ¶¶ 34, 35). Moreover,

RMS alleges that Dynatemp and Fluorofusion are collaborating to make, promote, and sell the Dynatemp R421A product and intending to do so in direct competition with RMS's R421A refrigerant product, while knowing that the Dynatemp R421A product is covered by one or more claims of the patents-in-suit.  (Id. ¶¶ 39, 40).

To promote the Dynatemp R421A product, Dynatemp's executive vice president, Gresham, issued the following statement to its customers:

## Dynatemp R421A™

As you know by now, Choice Refrigerants has announced that Lenz Distributors (Springfield, IL) will be a "Master Distributor" for Choice Refrigerants' line of gases, including R421A/B and R420A. While this is not altogether unexpected, the way in which it was announced caught a lot of people off guard. We would like to clarify some of the reasons behind that decision, as well as reassure you, and our loyal customers, that we have no intention of relinquishing the market we have worked so hard to build over the last several years. There will be several changes moving forward, some of which we'd like to lay out now:

- Moving forward, we will be shipping Dynatemp R421A™. The formulation of the refrigerant itself has remained the same; therefore, P/T charts are identical, Glide is identical, and the refrigerant performance is identical.
- The only changes in the product are the name and the lubricant it is packaged with. The "new" lubricant used in the process is a widely-used, high-grade lubricant that will continue to work with previously installed systems, as well as systems that have already been converted to Choice™ R421A. This means that the only noticeable change for the end-user will be the packaging.
- There are several key reasons that we wanted to move forward with this:
    a. Product availability and supply chain stability.
    b. This will ensure a steady, reliable supply of Dynatemp R421A™. With control over the production and packaging of the product, outages and lead times will be eliminated. Our customers spoke, and we listened.
    c. Consistent branding and marketing.
- We will be able to provide a full(er) suite of Dynatemp-branded refrigerants to our customers. This will allow cohesive marketing and sales programs across our lines of refrigerant. Marketing collateral will be available and distributed soon. In the meantime, please refrain from distributing any more Choice™ literature.

It will be important to stress that the product does not infringe on any intellectual property, conforms to ARI-700 standards, and falls under the ASHRAE-approved designation of R421A. If there are any questions regarding the name change, pricing changes, or marketing materials, please do not hesitate to reach out. We are very excited to continue to provide this R22 alternative to our customers who can expect the same Dynatemp quality and service moving forward.

8

(Gresham Statement (DE 79-1) at 2). On March 27, 2020, Dynatemp issued another statement to its customers, stating, in pertinent part:

As you know, for a number of years we have distributed the Choice® R421A product with a lubricant additive. Recently, we began a transition to producing and distributing our own Dynatemp R421A™ product. It contains a different lubricant that we believe you will find works even better. One of the reasons we are excited to bring you our new Dynatemp R421A™ product is that we now have more visibility and control over our supply chain. Not only will this reduce our costs and improve product time-to-market, but it will enhance the product quality and performance Dynatemp is known for. Bringing you our new Dynatemp R421A™ product hasn't been easy, but, in this global and volatile economy, if we can assure our customers increased on-time delivery, lower cost, and AHRI-700 designated purity, then it's definitely worth the effort.

. . .

As we make our transition to producing and distributing our new Dynatemp R421A™ product and phasing Choice® R421A out of our product line-up, we are continuing to sell our remaining inventory of Choice® 421A. It comes as a surprise to us that Choice Refrigerants has circulated to the U.S. refrigerants market a statement that Dynatemp is selling "a counterfeit version of Choice® R421A." **This is not true.** Each and every cylinder of R421A that Dynatemp sells under the Choice® brand is received directly from Choice Refrigerants.

We are also surprised to learn that Choice Refrigerants has gone so far as to call our new Dynatemp R421A™ product a "counterfeit," a "knock-off," and even "illegal." **This also is untrue.** Our new proprietary Dynatemp R421A™ product contains a different premium lubricant than Choice® R421A, and it is sold exclusively under our own Dynatemp brand. Also, our product is produced within AHRI-700 standards and, thus, complies fully with the EPA SNAP regulations. Further, the claim that the Dynatemp R421A™ product infringes a valid U.S. patent is simply unfounded.

(Statement (DE 79-6) at 1-2).

RMS alleges that Dynatemp and Fluorofusion have confused their customers through their promotion and sale of the Dynatemp R421A product. (Am. Counterclaims (DE 79) ¶ 42). In addition, RMS alleges that one such customer, Johnstone Supply, promotes a R421A refrigerant on its website by displaying it with 1) RMS's trade dress packaging, 2) RMS's trademarks Choice® and THE EASY CHOICE®, and 3) the label "Brand: Dynatemp." (Id. ¶¶ 43-44). In addition, RMS alleges that another customer, Southern Pipe & Supply, also promotes the sale of a R421A refrigerant on its

website by displaying RMS's trade dress packaging and trademarks Choice® and THE EASY

CHOICE® alongside the label "Dynatemp International R-421A." (Id. ¶ 45).

Moreover, according to RMS, Dynatemp and Fluorofusion assert that the Dynatemp R-421A

product has received EPA SNAP approval, when Dynatemp and Fluorofusion have neither submitted

the Dynatemp R421A refrigerant product to the EPA for approval nor received EPA SNAP approval.

(Id. ¶¶ 46, 48).   RMS also alleges that Dynatemp and Fluorofusion promote the Dynatemp R421A

product as "produced within AHRI-700 standards and thus complies fully with the EPA SNAP

regulations" when the Air-Conditioning, Heating and Refrigeration Institute, rather than the EPA,

promulgate the AHRI-700 standards.  (Id. ¶ 47).

Dynatemp and Fluorofusion allegedly have promoted the Dynatemp refrigerant as being

identical to RMS's R421A refrigerant, while at the same time containing "a different lubricant that

we believe you will find works even better."  (Id. ¶ 49).  Yet, according to RMS, Dynatemp and

Fluorofusion do not have any performance specification or data to show that the Dynatemp R421A

product performs as well as, or better than, RMS's R421A refrigerant.  (Id. ¶ 50).

### COURT'S DISCUSSION

A.    Motions to Dismiss Counterclaims

1.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v.

Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level."   Twombly,

550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as

true and construes these facts in the light most favorable to the plaintiff,"  but does not consider "

legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

2.  Analysis

Dynatemp and Fluorofusion seek dismissal of RMS's counterclaims for passing off, reverse passing off, and unfair competition under the Lanham Act, as well as its unfair competition counterclaim under North Carolina common law.[10] In addition, Fluorofusion seeks dismissal of RMS's counterclaims for false advertising under the Lanham Act, tortious interference with prospective economic advantage, and unfair and deceptive trade practices.

i.  Passing Off, Reverse Passing Off, and Unfair Competition

Section 43(a) of the Lanham Act prohibits a "false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . as to the origin" of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). One "type of false designation of origin . . . is a 'reverse passing off,' which occurs when a 'producer misrepresents someone else's goods or services as his own.'" Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 438 (4th Cir. 2010) (quoting Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n. 1, (2003). To state a claim for reverse passing off, a party must plausibly allege: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to

---

[10] Dynatemp and Fluorofusion also seek dismissal of RMS's counterclaims for trade dress and trademark infringement and trademark dilution. (See Mem. (DE 102) at 8-9). Although RMS pleaded counterclaims for trade dress and trademark infringement, as well as trademark dilution on September 25, 2020, (see Counterclaims (DE 16) ¶¶ 48-53), it filed amended counterclaims on December 11, 2020, omitting reference to trademark and trade dress infringement as well as trademark dilution. (Am. Counterclaims (DE 79)). In its response brief, RMS confirms that it "voluntarily withdrew its claims of trade dress and trademark infringement, and dilution in the present Frist Amended Counterclaims [Doc. 71-3], without prejudice, waiver or disclaimer of any rights it has or may have to present these issues in the future." (Mem. (DE 110) at 9). Accordingly, those counterclaims are no longer before the court, and the parts of Dynatemp's and Fluorofusion's motions to dismiss, seeking to dismissal of those counterclaims, are moot.

cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." Id. (citing Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc., 457 F.3d 1269, 1277 (Fed. Cir. 2006)). Conversely, "passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else." Dastar, 539 U.S. 23, at n.1 (2003) (citations omitted). Claims for unfair competition, another type of false designation, involve almost an identical inquiry. See Georgia Pac. Consumer Prod., LP v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010) (citations omitted) ("[T]he tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved."); Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 710 (4th Cir. 2016) (holding that infringement claims, claims for unfair competition do not require the plaintiff to "have used a U.S. trademark in U.S. commerce.").

Here, RMS fails to allege plausibly that Dynatemp and Fluorofusion designated falsely the origin of any work. RMS alleges that Johnstone Supply and Southern Pipe & Supply, Dynatemp and Fluorofusion's alleged customers, have displayed on their respective websites the Dynatemp R421A product and the Dynatemp brand alongside RMS's trade dress and trademarks. (See Counterclaims (DE 70) ¶¶ 43-45). Importantly, however, RMS fails to allege any facts that allow the court to infer that Dynatemp or Fluorofusion controlled the content on those websites. Although RMS alleges that "[u]pon information and belief, the actions of Dynatemp and Fluorofusion have confused even their own customers by their promotion, offering to sell, and selling their Dynatemp R421 product", this is a conclusory assertion devoid of factual enhancement. (Id. ¶ 42).

RMS relies upon Roberson v. Paul Smith, Inc., No. 5:07-CV-284-F, 2009 WL 10705410, at *3 (E.D.N.C. Mar. 31, 2009), for the proposition that it need not make a "facts showing" to survive a

motion to dismiss. (Mem. (DE 101) at 9). However, the court in <u>Roberson</u> applied the now outdated notice pleading standard. <u>See</u> <u>Roberson v. Paul Smith, Inc.</u>, No. 5:07-CV-284-F, 2009 WL 10705410, at *1 (E.D.N.C. Mar. 31, 2009) ("A motion to dismiss under FED. R. CIV. P. 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief.") (citing <u>Smith v. Frye</u>, 488 F.3d 263, 274 (4th Cir. 2007). Under the current pleading standard, while "detailed factual allegations" are not required, <u>Iqbal</u>, 556 U.S. at 678, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

And here, RMS's allegation that Dynatemp and Fluorofusion's promotional efforts have confused their customers is particularly speculative in light of the statements issued by Dynatemp which RMS attached to its counterclaims. In one such statement to its customers, Dynatemp took measures to distinguish its R421A product from RMS's product, stating: "for a number of years we have distributed the Choice® R421A product with a lubricant additive. Recently, we began a transition to producing and distributing our own Dynatemp R421A™ product. It contains a different lubricant that we believe you will find works even better." (Stmt. (DE 79-6) at 1). Dynatemp further distinguished the products by stating: "We are also surprised to learn that Choice Refrigerants has gone so far as to call our new Dynatemp R421A™ product a 'counterfeit,' a 'knock-off,' and even 'illegal.' This also is untrue. Our new proprietary Dynatemp R421A™ contains a different premium lubricant than Choice® R421A, and <u>it is sold exclusively under our own Dynatemp brand</u>." (<u>Id.</u>) (emphasis added).

Dynatemp also clarified that "[a]s we make our transition to producing and distributing our new Dynatemp R421A™ product and phasing Choice® R421A out of our product line-up, we are continuing to sell our remaining inventory of Choice® 421A . . . Each and every cylinder of R421A

14

that Dynatemp sell under the Choice® brand is received directly from Choice Refrigerants." (Id.). Finally, in another statement to its customers, Dynatemp explained: "We will be able to provide a full(er) suite of Dynatemp-branded refrigerants to our customers. . . Marketing collateral will be available and distributed soon. In the meantime, please refrain from distributing any more Choice™ literature." (Gresham Stmt. (DE 79-1) at 2). Thus, rather than falsely designating the origin of any of RMS's work, Dynatemp's statements to its customers reflect an effort to distinguish its products from RMS's products, to associate its products with the Dyntamp R421A™ brand, and to associate RMS's R-421A product with RMS's trade dress and trademarks.

RMS also relies upon its allegations that Dynatemp and Fluorofusion claimed the Dynatemp R421A product is EPA SNAP certified, when it is allegedly not so certified; that the Dynatemp R421A product's lubricant performs even better than RMS's lubricant, when they allegedly have no performance specification or data to support this claim; and that the Dynatemp R421A product does not infringe upon the patents-in-suit, when they have allegedly admitted their infringement. While these allegations may be relevant to RMS's false advertising counterclaim under the Lanham Act, they do not suggest that Dynatemp or Fluorofusion falsely designated any of RMS's work as their own, or falsely designated their work as RMS's work. In sum, RMS fails to state a claim for reverse passing off, passing off, or unfair competition against Dynatemp or Fluorofusion, and such counterclaims must be dismissed without prejudice.

> ii.     False Advertising

Fluorofusion seeks dismissal of RMS's counterclaim for false advertising under the Lanham Act. The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

15

commercial activities[.]" 15 U.S.C. § 1125(a)(1). To state a claim for false advertising, RMS must allege:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Verisign, Inc. v. XYZ.COM LLC, 848 F.3d 292, 298–99 (4th Cir. 2017) (Design Res., Inc. v. Leather Indus. of Am., 789 F.3d 495, 501 (4th Cir. 2015)). Failure to plausibly allege "any one" of these five elements is "fatal" to RMS's counterclaims. Id. at 299. Importantly RMS must allege "one challenged statement that satisfies all five Lanham Act requirements . . . a Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others. Id. (citing Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc., 299 F.3d 1242, 1248 (11th Cir. 2002)).

Here, referencing an exhibit attached to its counterclaims, RMS alleges that Dynatemp and Fluorofusion promote the Dynatemp R421A product as within AHRI-700 standards and, as a result, in compliance with the EPA SNAP regulations, when the AHRI-700 standards are promulgated by the AHRI and not by the EPA. (Am. Counterclaim (DE 79) ¶ 47). The exhibit referenced by RMS features Dynatemp's logo in the upper lefthand corner, and it displays contact information of a Dynatemp employee with an Dynatemp email address. (See Statement (DE 79-6) at 1). It omits any reference to Fluorofusion. (See id. at 1-2). Nevertheless, RMS urges the court to attribute the exhibit also to Fluorofusion, based on RMS's allegations that: 1) Fluorofusion and Dynatemp are working together to blend and market the Dynatemp R421A product; 2) Couchot threatened Ponder with the prospect of "the Chinese coming after him" if he did not renegotiate with Dynatemp; 3)

16

Fluorofusion's and Dynatemp's business dealings are "inextricably intertwined"; and 4) Kivlan, Dynatemp's chief executive officer is also an officer of Fluorofusion. (Mem. (DE 110) at 13-14).[11] While the foregoing allegations suggest a business relationship between Fluorofusion and Dynatemp, they are insufficient for the court to infer that Fluorofusion is Dynatemp's agent or alter ego, or that Fluorofusion and Dynatemp are engaged in a joint venture, such that any liability on Dynatemp's part may be imputed to Fluorofusion.

Apart from the referenced exhibit, RMS also alleges that "Dynatemp and Fluorofusion assert their Dynatemp R421A product has received EPA SNAP approval . . . intending to confuse the consuming public into believing that they have received EPA approval . . . when Dynatemp and Fluorofusion have neither submitted their assertedly different formulation . . . for SNAP approval, nor have they received SNAP approval." (Am. Counterclaims (DE 79) ¶¶ 47-48). However, RMS does not identify the context in which Fluorofusion allegedly asserted that the Dynatemp R421A product has received SNAP approval. As a result, the court cannot determine whether Fluorofusion's alleged assertion was made in a "commercial advertisement" or whether Fluorofusion placed the alleged assertion in interstate commerce, which are requisite elements of a false advertising claim. See Verisign, 848 F.3d at 298–99.

In sum, RMS fails to state a false advertising claim against Fluorofusion, and this counterclaim must be dismissed without prejudice.

           iii.      Tortious Interference with Prospective Economic Advantage

---

[11] RMS also relies upon Ponder's declaration, submitted in conjunction with R421A, LLC's motion for preliminary injunction. (See Mem. (DE 110) at 13). However, in ruling on a motion to dismiss, the court's inquiry is limited to RMS's counterclaims, as well as documents attached thereto. See Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 705 (4th Cir. 2016) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)) ("In ruling on a motion to dismiss, 'a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.'"). The court declines to convert the instant motions to dismiss to summary judgment motions, by considering extraneous filings such as Ponder's declaration. (See Fed. R. Civ. P. 12(d)).

Fluorofusion seeks dismissal of RMS's counterclaim for tortious interference with prospective economic advantage. "This tort arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'" Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 701 (2016) (quoting Spartan Equip. Co. v. Air Placement Equip. Co., 263 N.C. 549, 559 (1965)). However, "expectation of a continuing business relationship is insufficient to establish such a claim." Id. (citing Dalton v. Camp, 353 N.C. 647, 655 (2001)). Rather, a claimant must plausibly allege "that a contract would have resulted but for a defendant's malicious intervention. Id.

Here, RMS alleges that "through their activities alleged herein Dynatemp and Fluorofusion have intentionally induced one or more potential customers not to enter into contracts to purchase Choice® R-421A from Choice or to demand that Choice reduce the price of its Choice® R421A product in order to make a sale of the Choice® R421A product." (Am. Counterclaim (DE 79) ¶ 86). RMS further alleges that "[s]uch potential customers would have purchased Choice® R421A product from Choice or would have paid a higher price for the Choice® R421A product but for Dynatemp's and Fluorofusion's activities alleged herein." (Id.).

RMS fails to state a claim for tortious interference against Fluorofusion. Fluorofusion's "activities alleged herein" include that 1) Fluorofusion "orders, combines, blends and/or packages the Dynatemp R421A product knowing and intending that will be offered, promoted and sold as an alternative to, and in direct competition with, the Choice® R421A refrigerant product"; 2) Dynatemp and Fluorofusion are working together and collaborating together to make, promote and sell the Dynatemp R421A product and intending to do so in direct competition with Choice's R421A

18

refrigerant product"; and 3) "Dynatemp and FluoroFusion assert their Dynatemp R421A product has received EPA SNAP approval . . . intending to confuse the consuming public into believing that they have received EPA SNAP approval." (Id. ¶¶ 35, 39, 47-48). Such allegations fall short of interfering with any contract, and without alleging specific lost contracts that RMS was deprived of by Fluorofusion's conduct, RMS does not establish tortious interference. Beverage Sys. of the Carolinas, 368 N.C. at 701. ("[P]laintiff appears to rely on the expectation that [] former customers would continue to do business with plaintiff, an expectation insufficient to support a claim for either tortious interference with contract or tortious interference with prospective economic advantage."). Therefore, RMS's counterclaim against Fluorofusion must be dismissed without prejudice.

iv.    Unfair and Deceptive Trade Practices

Fluorofusion seeks dismissal of RMS's counterclaim for unfair and deceptive trade practices.

In North Carolina, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton, 353 N.C. at 656. "The determination of whether an act or practice is an unfair or deceptive practice that violates [N.C. Gen. Stat.] § 75–1.1 is a question of law for the court." Gray v. N. Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000).

Here, RMS relies upon its allegations of "Fluorofusion's knowing participation in the business between Choice and Dynatemp [Doc. 79 ¶ 35, 43-45], and Fluorofusion's participation in the marketing claims made regarding Dynatemp R421A's provenance [Id. ¶ 69-77], as well as Fluorofusion's participation in the false claims of SNAP approval of Dynatemp R421A [Id. ¶ 46-

19

48]." (Mem (DE 110) at 15) (brackets in original). As stated in more detail herein, RMS does not allege sufficient facts for the court to impute liability to Fluorofusion based upon Dynatemp's actions. Moreover, RMS's bare assertion that "Dynatemp and Fluorofusion assert their Dynatemp product has received EPA SNAP approval . . . intending to confuse the consuming public into believing that they have received EPA SNAP approval", (Am. Counterclaim (DE 79) ¶¶ 47-48), lacks sufficient factual enhancement for the court to determine whether RMS states a claim for unfair and deceptive trade practices.

RMS also relies upon its allegation that Fluorofusion's president, "Mr. Couchot took the lead in the discussions on behalf of both Dynatemp and Fluorofusion and demanded a renegotiation of the distribution agreement between Choice and Dynatemp . . . stat[ing] bluntly: 'We are going to make your product and pay you a royalty.'" (Id. ¶ 28). Although RMS alleges that its president, Ponder, "interpreted Mr. Couchot's statement at as demand that Dynatemp and Fluorofusion be granted a license under the patents covering the Choice® R421A refrigerant product, with new terms that were much more favorable to Dynatemp, at Choice's expense", RMS also alleges that Ponder did not accept those new terms. (Id.). As a result, even assuming Fluorofusion's renegotiation demand constitutes an unfair or deceptive practice, RMS fails to plausibly allege that it proximately caused injury to RMS, a requisite element of this counterclaim, since RMS did not accept Fluorofusion's requested terms.

In sum, RMS fails to state a claim for unfair and deceptive trade practices against Fluorofusion, and this counterclaim must be dismissed without prejudice.

B.    Motion for Preliminary Injunction

    1.    Standard of Review

20

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22; see Real Truth About Obama Inc. v. Fed. Election Comm'n, 575 F.3d 342, 347 (4th Cir. 2009) (stating that a plaintiff seeking a preliminary injunction must "make a clear showing" of likelihood of success and irreparable harm) (citing Winter, 555 U.S. at 20), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

"The rationale behind a grant of a preliminary injunction has been explained as preserving the status quo so that a court can render a meaningful decision after a trial on the merits." Hazardous Waste Treatment Council v. S. Carolina, 945 F.2d 781, 788 (4th Cir. 1991) (quotations omitted). Accordingly, "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994); see E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir.2004); Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

With respect to findings of fact and conclusions of law, a preliminary injunction is decided "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing," and the findings of fact and conclusions of law made by a court in ruling on a preliminary injunction are not binding at trial on the merits. See id.

21

2.      Analysis

    a.      Irreparable Harm

A party seeking a preliminary injunction must make a "clear showing" of irreparable harm. Winter, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Here, R421A, LLC fails to make the requisite showing. Notably, R421A, LLC does not cite any case finding irreparable harm in analogous circumstances. Instead, R421A, LLC relies upon cases holding that a patentee suffers irreparable harm where it is forced to compete with an infringer in the marketplace, and as a result, loses customers and market share to the infringer. See, e.g., Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 702 F.3d 1351, 1354 (Fed. Cir. 2012) (holding that the patentee, a manufacturer of electrical components, demonstrated irreparable harm where it was forced to compete for the same customers in the same markets as its infringer).

Here, however, R421A, LLC does not compete with Dynatemp in the marketplace for sales of R421A. R421A, LLC is an intellectual property holding company that does not manufacture, sell, or market its patented product. (See Ponder Decl. (DE 65-2) ¶ 14). Instead, R421A, LLC licenses R421A to RMS, who sells the product in exchange for royalty fees. (See Kivlan Dec. (DE 90-2) ¶ 11). If RMS loses sales of R421A to Dynatemp, R421A, LLC does not lose any customers or market share; rather, it loses royalty payments from RMS. For example, the United States Court of Appeals for the Federal Circuit observed as follows in analogous circumstances:

> Cablevision has a license from ActiveVideo wherein it pays ActiveVideo a licensing fee for each subscriber Cablevision has. Hence, if Verizon takes a customer away from Cablevision, ActiveVideo loses that fee . . .  Straight-forward monetary harm of this type is not irreparable harm. Whether ActiveVideo receives this subscriber fee from Verizon or from Cablevision, it will be adequately compensated. Nor is this harm 'incalculable' as ActiveVideo argues . . . ActiveVideo does not lose market share when

22

> Cablevision loses a subscriber to Verizon, it loses the Cablevision licensing fee. Cablevision, not ActiveVideo, has lost market share.

ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1338 (Fed. Cir. 2012). As in ActiveVideo, here R421A, LLC's loss of royalty payments is not irreparable, but rather capable of a damages calculation. See Hughes Network Sys., Inc. v. InterDigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable.").[12]

Nevertheless, R421A, LLC argues that it has shown irreparable harm, relying upon the following:

> some patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves. Such patent holders may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006). However, as the Federal Circuit emphasized, in eBay the United States Supreme Court "held only that patent owners that license their patents rather than practice them may be able to satisfy the traditional four-factor test for a permanent injunction. Nothing in eBay eliminates the requirement that the party seeking [an] injunction must show that it has suffered an irreparable injury." Voda v. Cordis Corp., 536 F.3d 1311, 1329 (Fed. Cir. 2008) (internal quotation marks and citation omitted) (emphasis added). And here, R421A, LLC has not made the requisite showing that it has suffered an irreparable injury. R421A, LLC relies on Ponder's declaration, wherein he testifies that, due to competition from Dynatemp, the distributor

---

[12] R421A, LLC argues the cases relied upon by the Dynatemp and Fluorofusion parties are distinguishable because those cases do not involve exclusive licensing arrangements. This distinction is not dispositive. The Federal Circuit has upheld the district court's denial of an injunction where, as here, the movant "had attempted to prove irreparable injury by alleging irreparable harm to his exclusive licensee, rather than himself." Voda v. Cordis Corp., 536 F.3d 1311, 1329 (Fed. Cir. 2008).

23

price of R421A has decreased approximately seven to 15 percent and the wholesale price has decreased approximately 18 or 19 percent. (Ponder Decl. (DE 65-2) ¶ 50). While this price decrease may affect RMS's profit margins, R421A, LLC receives royalty payments from RMS at a fixed price per pound, which is unaffected by RMS's profit margins. (See Exhibit (DE 88 at 2; Resp. (DE 82-2) at 5-6). So, any derivative or indirect harm to R421A, LLC is speculative at best.

R421A, LLC also argues that it will suffer irreparable harm through loss of goodwill, reputation, brand recognition, and business opportunities. However, this potential harm is speculative as well. R421A, LLC has put forth no evidence that RMS's customers know that R421A, LLC exists, that they associate R421A, LLC with the R421A refrigerant product, or that any goodwill accrues to R421A, LLC, as opposed to RMS. Moreover, there is no evidence in the record that R421A, LLC was involved in the research and development of the R421A product, or that R421A, LLC has a reputation for the same. Cf. eBay, 547 U.S. at 393 (suggesting "university researchers or self-made inventors" may be able to show irreparable harm). To the contrary, the evidence shows that R421A, LLC did not form until 2014, (see Art. of Inc. (DE 87-3) at 2), approximately 11 years after the EPA SNAP application for R421A, (see Document (DE 65-13) at 2) (reflecting date of September 25, 2003), and approximately five years after Ponder received an award recognizing R421A refrigerant as "the most innovative and useful to HVAC contractors", (see (DE 65-3) at 2).

R421A, LLC's arguments that Dynatemp is preventing R421A, LLC from controlling the efficacy and safety of R421A refrigerants and usurping R421A, LLC's business opportunities also fail, where there is no evidence that R421A, LLC manufactures or sells the R421A refrigerant. Moreover, R421A, LLC cannot rest its purported harm entirely on its complaint that, as a patent holder, it is unable to exclude Dynatemp's R421A product from the market. While the right to exclude is a factor to be considered, it alone cannot justify imposition of an injunction. See Robert

24

Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." (citation omitted)).

Because the court finds that R421A, LLC cannot establish irreparable harm, R421A, LLC cannot be granted a preliminary injunction, and it is unnecessary for the court to analyze the likelihood of success on the merits, the balance of hardships, or the impact of a potential injunction on the public interest. See Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1356 (Fed. Cir. 2002) ("While granting a preliminary injunction requires analysis of all four factors, a trial court may, as the court did here, deny a motion based on a patentee's failure to show any one of the four factors— especially either of the first two—without analyzing the others.") (citations omitted); Polymer Techs, Inc. v. Bridwell, 103 F.3d 970, 973–74 (Fed. Cir.1996) ("[A] trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors.").

In sum, R421A, LLC has failed to carry its burden necessary to justify the imposition of the extraordinary relief of a preliminary injunction.

C.      Motions to Seal

R421A, LLC and RMS move to seal an exhibit detailing royalty payments made by RMS to R421A, LLC, which the Dynatemp and Fluorofusion parties filed contemporaneously with their response to motion for preliminary injunction. In addition, the Dynatemp and Fluorofusion parties move to seal portions of their response to motion for preliminary injunction, as well as Kivlan's supporting declaration.

In evaluating a motion to seal, in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone v. University of Maryland, 855 F.2d 178 (4th Cir. 1988), the court must first "determine [whether] the source of [the public's] right of access . . . is based on the common law or

25

the First Amendment" with respect to each document to be sealed. Id. at 180. This is because "different levels of protection may attach to the various records and documents involved in [a] case." Id. "The common law presumes a right to inspect and copy [all] judicial records and documents," and this presumption "may be overcome if competing interests outweigh the interest in access." Id. (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); Rushford v. The New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988); In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986)). The First Amendment guarantees a heightened presumption of access "only to particular judicial records and documents," including "documents filed in connection with [a] summary judgment motion in civil case." Id. (citing Rushford, 846 F.2d at 253).

Although the United States Court of Appeals for the Fourth Circuit has not addressed whether the First Amendment or the common law right of access applies to documents filed in conjunction with a motion for preliminary injunction, several circuits, as well as district courts within the Fourth Circuit, have held that the First Amendment right of access applies. See Publicker Indus., Inc. v. Cohen, 733 F.2d 1059 (3rd Cir.1984) (finding a First Amendment right of access to preliminary injunction proceedings); Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1103 (9th Cir. 2016) ("Due to the strong presumption for public access and the nature of the instant motion for a preliminary injunction, Chrysler must demonstrate compelling reasons to keep the documents under seal."); Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013) ("The Court concludes that the briefing and exhibits filed in connection with motions seeking injunctive relief are subject to the public's First Amendment right of access."); RLI Ins. Co. v. Nexus Servs., Inc., No. 5:18-CV-00066, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) ("RLI pursues sealing a motion for preliminary injunction and its supporting memorandum, declarations, and exhibits. Accordingly, the more

26

stringent First Amendment right of public access applies."). Finding the weight of authority to be persuasive, the court concludes that the First Amendment right of access applies to filings subject of the instant motions to seal.

"Where the First Amendment guarantees access, . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Id. (citing Rushford, 846 F.2d at 253; Press–Enter. Co. v. Superior Ct., 464 U.S. 501, 510 (1984)). In order to seal documents, the court must 1) "give the public notice of a request to seal and reasonable opportunity to challenge it," 2) "consider less drastic alternatives to sealing," and 3) "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing." Stone, 855 F.2d at 181 (quoting In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984)).

Here, R421A, LLC and RMS seek seal of information detailing the royalty payments RMS made to R421A, LLC from 2017 until 2020, while the Dynatemp and Fluorofusion parties seek seal of information disclosing the number of cylinders Dynatemp has sold and expects to sell, along with the associated sales revenues, and its customers' preferences and behaviors. The parties have a compelling need to protect this financial data and business information, which outweighs the public's interest in access. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1987) (noting that public access may be inappropriate for "business information that might harm a litigant's competitive standing"); Pittston Co. v. United States, 368 F.3d 385, 406 (4th Cir. 2004) (holding it was not an abuse of discretion to refuse to unseal documents containing confidential, commercial business information and financial data); see also Bayer Cropscience, 979 F. Supp. 2d at 656 (granting motion to seal "confidential certain marketing, sales, and licensing information" after finding First Amendment right of access applied).

27

In addition, both motions to seal provide reasonable notice of the request to seal, and the public has had an opportunity to object to the request to seal. See In re Knight Pub. Co., 743 F.2d at 235. Finally, the requested relief is narrowly tailored, since the Dynatemp and Fluorofusion parties have filed redacted copies of their response brief and the Kivlan declaration, concealing sales data and associated revenues while leaving all other information visible. (Redacted Response Brief (DE 92); Redacted Kivlan Decl. (DE 90-2)). This is a reasonable alternative to sealing that adequately balances the public's right to access and the privacy of the parties. Although R421A, LLC and RMS have not filed a redacted version of the one-page exhibit detailing the amount of royalties paid, the court sees no less drastic alternative to the sealing of the financial figures. Therefore, Dynatemp and Fluorofusion parties' motion to seal and R421A, LLC and RMS's motion to seal are granted.

## CONCLUSION

Based on the above stated findings of fact and conclusions of law, R421A, LLC's motion for preliminary injunction (DE 64) is DENIED.

Dynatemp's partial motion to dismiss counterclaims (DE 100) is GRANTED IN PART and DENIED IN PART AS MOOT, and FluoroFusion's motion to dismiss counterclaims (DE 101) is GRANTED IN PART and DENIED IN PART AS MOOT. RMS's counterclaims for reverse passing off, passing off, and unfair competition under the Lanham Act, as well as its unfair competition claim under North Carolina law against Dynatemp and Fluorofusion are DISMISSED WITHOUT PREJUDICE. RMS's counterclaims for false advertising and tortious interference with prospective economic advantage, and unfair and deceptive trade practices against Fluorofusion are DISMISSED WITHOUT PREJUDICE. Where RMS no longer asserts counterclaims for trade dress and trademark infringement and trademark dilution, that part of Dynatemp's and Fluorofusion's motions to dismiss, seeking to dismiss such counterclaims, is DENIED AS MOOT.

28

Dynatemp and Fluorofusion's motion to seal (DE 90) is GRANTED, and R421A, LLC and RMS's motion to seal (DE 98) is GRANTED. The Kivlan declaration lodged at DE 81, the exhibit lodged at DE 88, and the Dynatemp and Fluorofusion parties' response to motion for preliminary injunction lodged at DE 80, are SEALED. Redacted versions of the Kivlan Declaration and the Dynatemp and Fluorofusion parties' response to motion for preliminary injunction are lodged at DE 90-2 and DE 92, respectively.

SO ORDERED, this the 30th day of July, 2021.


_____
LOUISE W. FLANAGAN
United States District Judge