IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-142-FL

| | | |
|---|---|---|
| DYNATEMP INTERNATIONAL, INC.; FLUOROFUSION SPECIALTY CHEMICALS, INC.; HAROLD B. KIVLAN, IV; WILLIAM GRESHAM; and DAVID COUCHOT, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| R421A, LLC; RMS OF GEORGIA, LLC, d/b/a Choice Refrigerants; KENNETH M. PONDER; and LENZ SALES & DISTRIBUTING, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court for a claim construction order. The parties filed a revised joint claim construction statement, claim construction briefs, and responses thereto. In addition, motion to strike (DE 166) was filed by RMS of Georgia, LLC ("RMS") and R421A, LLC (collectively, the "RMS parties"). The court held hearing on motion to strike and claim construction on August 31, 2021, and took the matters under advisement. In this posture, the issues raised are ripe for ruling. The court sets forth below its decision on the parties' disputed claim term and denies the RMS parties' motion to strike.

## BACKGROUND

The court recounts procedure pertinent to the issues now under consideration in this consolidated case. On April 22, 2021, the RMS parties filed the operative second amended complaint, asserting claims of patent infringement, induced infringement, and contributory infringement against

Dynatemp International, Inc. ("Dynatemp"); Fluorofusion Specialty Chemicals, Inc. ("Fluorofusion"); Harold B. Kivlan, IV, the chief executive officer and chief financial officer of Dynatemp and officer of Fluorofusion; William Gresham, vice president of Dynatemp; and David Couchot, president of Fluorofusion (collectively, the "Dynatemp parties"). The RMS parties claim that the Dynatemp parties market a refrigerant product that infringes upon three patents owned by R421A, LLC, U.S. Patent No. 9,982,179; U.S. Patent No. 8,197,706; U.S. Patent No. 10,703,949 (the "'179 Patent", the "'706 patent", the "'949 Patent", collectively, "the patents").

The patents, each entitled "Refrigerant with Lubricating Oil for Replacement of R22 Refrigerant," are directed to an apparatus and method for substituting ozone layer-damaging chlorodifluoromethane with less environmentally damaging refrigerants, pentafluroethane and tetrafluoroethane, in chlorodifluoromethane-based-air-cooling systems. The patents share virtually identical specifications, and the claims of the patents include many overlapping claim terms.

As required by the court's October 23, 2020, case management order and Local Patent Rule 304.3, the parties filed a joint claim construction statement on April 9, 2021, setting forth nine disputed claim terms and proposed constructions for those terms. After an initial round of briefing on claim construction, the parties filed a revised joint claim construction statement on July 14, 2021, narrowing the disputed claim terms from nine to two. That same day, the parties filed responsive claim construction briefs.

Two weeks later, the RMS parties moved to strike exhibits attached to the Dynatemp parties' responsive claim construction brief. In support, the RMS parties rely upon a memorandum of law, the Dynatemp parties' disclosure of preliminary constructions, correspondence between the parties, and highlighted versions of the Dynatemp parties' responsive claim construction brief and appendix thereto. The Dynatemp parties responded in opposition on August 19, 2021, relying upon email

2

correspondence and declarations of counsel. The RMS parties replied shortly thereafter, relying upon the Dynatemp parties' disclosure of proposed terms, as well as a declaration of counsel.

On August 31, 2021, the court held hearing on motion to strike and claim construction, which included presentations in the nature of a tutorial and argument regarding disputed claim terms and motion to strike. As noted in the analysis herein, the parties reached agreement at hearing on one disputed claim term, leaving one term for construction herein.

## COURT'S DISCUSSION

A.  Motion to Strike

The RMS parties move to strike the following exhibits attached to the Dynatemp parties' responsive claim construction brief: 1) definitions of "standard state" and "normal temperature and pressure" in the Oxford Dictionary of Mechanical Engineering ("exhibit 12") and 2) AHRI Standard 700 ("exhibit 20").[1] According to the RMS parties, this evidence was not disclosed in the parties' joint claim construction statement, in contravention of Local Patent Rule 304.3.

As relevant here, Local Patent Rule 304.3 provides that the parties' joint claim construction statement shall contain:

> an identification of any extrinsic evidence <u>known</u> to the party on which it <u>intends</u> to rely either to support its proposed construction of the claim or to oppose any other party's proposed construction of the claim, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses.

Local Patent Rule 304.3(b) (emphasis added).

When faced with the interpretation of a procedural rule, like the interpretation of any statute, the court's analysis must begin with the plain language of the rule. See, e.g., <u>Dodd v. United States</u>,

---

[1] Originally, the RMS parties sought to exclude 18 exhibits. (See Mot. (DE 166)). Subsequently, at hearing, the Dynatemp parties voluntarily withdrew all exhibits except exhibits eight, nine, 12, and 20. Shortly thereafter, the RMS parties consented to admission of exhibits eight and nine. In consequence, only exhibits 12 and 20 remain subject of the motion to strike.

3

545 U.S. 353, 359 (2005) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). The plain language of Local Patent Rule 304.3(b) states only that a party must identify extrinsic evidence "<u>known</u> to the party on which it <u>intends</u> to rely either to support its proposed construction of the claim or to oppose any other party's proposed construction of the claim." Local Patent Rule 304.3(b) (emphasis added). By implication then, the rule does not require the joint claim construction statement to include extrinsic evidence if that evidence is <u>not known</u> to the party or if the party does <u>not intend</u> to rely upon it. See generally <u>Reyes-Gaona v. N. Carolina Growers Ass'n</u>, 250 F.3d 861, 865 (4th Cir. 2001) ("[T]he doctrine of <u>expressio unis est exclusio alterius</u> instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded."). Accordingly, Local Patent Rule 304.3(b) imposes a subjective standard, that turns on a party's knowledge and intent at the time the joint claim construction is filed.

Here, exhibits 12 and 20 constitute extrinsic evidence. <u>Phillips v. AWH Corp</u>., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (explaining that "extrinsic evidence" includes expert testimony, technical information, and dictionaries). As a result, Local Patent Rule 304.3(b) requires early disclosure of this evidence only if the Dynatemp parties knew of it and intended to rely upon it when they filed the joint claim construction statement. <u>See</u> Local Patent Rule 304.3(b). As detailed in his sworn declaration, counsel for the Dynatemp parties did not consult exhibit 12 in connection with this case until June or July 2021, after the RMS parties argued in their opening claim construction brief that reference to standard conditions was arbitrary. (Trembath Decl. (DE 175) ¶ 5). Likewise, counsel became aware that exhibit 20 distinguishes between liquid refrigerants and refrigerant gases for the first time on June 25, 2021, when he was attempting to formulate a response to the RMS parties'

4

opening claim construction brief. (Id. ¶¶ 7-8). Since the Dynatemp parties intended to rely on these exhibits only after reading the RMS parties' opening claim construction brief, Local Patent Rule 304.3(b) does not preclude their admissibility.

The RMS parties urge the court to interpret Local Patent Rule 304.3(b) as imposing an objective standard. Otherwise, they argue, a party will become the arbiter of its own disclosure obligations, and parties will refuse to look for evidence until later in the claim construction process to avoid disclosing it. While this argument supports an objective standard, there are countervailing policy considerations at play. As evidenced by the record in this case, claim construction is a fluid process. Following an initial round of briefing on claim construction, the parties reached an agreement on seven of the previously disputed claim terms, and the RMS parties revised their proposed construction for "refrigerant gas." A subjective standard accommodates this fluidity, whereas an objective standard penalizes a party for lacking foresight into another party's position on claim construction, which is subject to amendment and revision. At bottom, however, the court's role in this instance is not weigh competing policy considerations or "to improve upon the language of the rule but rather to apply it as written." Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc., 63 F. Supp. 3d 558, 564 (E.D.N.C. 2014) (citing Dodd, 545 U.S. at 359). As it is written, Local Patent Rule 304.3(b) imposes a subjective standard.

The RMS parties also cite a string of unpublished district court cases from other circuits, applying similar local patent rules, and argue no other court in the country has adopted a subjective interpretation. This is incorrect. See, e.g., Parthenon Unified Memory Architecture LLC v. HTC Corp., No. 2:14-CV-690-RSP, 2015 WL 11117317, at *1 (E.D. Tex. June 4, 2015) ("The Local Patent Rules, along with Lodsys and its progeny, require early disclosure of known extrinsic evidence upon which a party intends to rely. But this does not extend to the scenario presented here: where a party

5

seeks to produce extrinsic evidence in its reply claim construction brief to respond an argument presented for the first time in a party's responsive claim construction brief. To put it succinctly: this Court expects diligence and reasonable foresight in identifying extrinsic evidence, but cannot expect clairvoyance.").

Moreover, the majority of cases cited by the RMS parties do not provide any analysis on whether the language imposes a subjective or objective standard, and they involve different issues. See GoPro, Inc. v. C&A Mktg., Inc., No. 16-CV-03590-JST, 2017 WL 2335377, at *3 (N.D. Cal. May 30, 2017) (excluding evidence where an expert witness disclosure in the joint claim construction statement did not provide sufficient detail to put the opposing party on notice of the expert witness's testimony); LBS Innovations, LLC v. Apple Inc., No. 219CV00119JRGRSP, 2020 WL 1433954, at *2 (E.D. Tex. Mar. 24, 2020) (rejecting argument that a disclosure requirement in the local patent rules did not apply to expert witness declaration because the declaration was "merely being used to show that the current claim construction positions taken by LBSI are consistent with positions taken by LBSI in previous litigation over this patent"); Neodron, LTD. v. Lenovo Grp., Ltd., No. 19-CV-05644-SI, 2020 WL 3962002, at *8 (N.D. Cal. July 13, 2020) (granting motion to strike untimely expert declaration); Shire LLC v. Amneal Pharms., LLC, No. CIV.A. 11-3781 SRC, 2013 WL 1932927, at *10 (D.N.J. May 7, 2013) (striking expert witness declarations where the expert witness disclosures were not sufficiently detailed to provide notice of the opinions offered); Fluidigm Corp. v. IONpath, Inc., No. C 19-05639 WHA, 2020 WL 5073938, at *6 (N.D. Cal. Aug. 25, 2020) (allowing "patent owner to amend its infringement contentions to include the new [ ] theories and to amend its expert report to remove improper claim construction", where expert was not previously disclosed as claim construction expert); Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC, No. 1:11-CV-1634-HLM, 2015 WL 11142427, at *14 (N.D. Ga. May 21, 2015) (granting

motion to strike new invalidity defenses disclosed for the first time in an expert report); PersonalWeb Techs. LLC v. Int'l Bus. Machs. Corp., No. 16-CV-01266-EJD, 2017 WL 8186294, at *6 (N.D. Cal. July 25, 2017); (excluding expert opinions at trial that were not disclosed in expert report); Source Search Techs., LLC v. Kayak Software Corp., No. CIV.A. 11-3388 FSH, 2014 WL 46769, at *6 (D.N.J. Jan. 6, 2014) (excluding plaintiff's untimely expert declaration on filtering because "Defendant has not raised any new arguments as to filtering means claim construction, Plaintiff was sufficiently on notice that Defendant intended to argue that the only filtering means were located in Figures 5 and 6"); Ipsilium LLC v. Cisco Sys., Inc., No. 17-CV-07179-HSG, 2019 WL 1644399, at *3 (N.D. Cal. Apr. 16, 2019) (striking untimely expert declaration, rejecting argument that the local patent rules do not require disclosure of a rebuttal expert, and rejecting argument that opposing party's noncompliance with the rules justified untimely disclosure). Therefore, these cases are not persuasive.

In sum, adopting the RMS parties' suggested interpretation of Local Patent Rule 304.3(b) would require the court to ignore the plain language of the rule. Because the Dynatemp parties did not violate this plain language, the RMS parties' motion to strike is denied.

B. Claim Construction

 1. General Principles

Analysis of infringement involves two steps. "The first step is determining the meaning and scope of the patent claims asserted to be infringed." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). "The second step is comparing the properly construed claims to the device accused of infringing." Id. It is the first step, "commonly known as claim construction or interpretation," that is at issue at the present stage of this case. Id.

7

The court's role in claim construction is to "analyze the text of the patent and its associated public record and apply the established rules of construction, and in that way arrive at the true and consistent scope of the patent owner's rights to be given legal effect." Id. at 979. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips, 415 F.3d at 1312 (internal quotations omitted). Thus, the goal of claim construction is to determine the meaning of the claims. See id.

"[T]he words of a claim are generally given their ordinary and customary meaning." Id. (internal quotations omitted). In turn, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1313. In addition, the claims "must be read in view of the specification, of which they are a part." Id. at 1315 (quotations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id. (internal quotations omitted). "[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." Id. at 1323. "Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." Id.

The prosecution history may also be relevant. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "The prosecution history . . . consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent." Phillips, 415 F.3d at 1317

(citation omitted.) However, the court cannot "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." 3M Innovative Props. v. Tradegar Corp., 725 F.3d 1315, 1322 (Fed. Cir. 2013).

Finally, "[a]lthough [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [the court has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Phillips, 415 F.3d at 1317 (quoting Markman, 52 F.3d at 980).

    2.    Disputed Term - "Refrigerant gas"[2]

- RMS parties' proposed construction: combination of refrigerant components in the refrigerant composition
- Dynatemp parties' proposed construction: refrigerants that are neither liquid nor solid at standard temperature (68°) and pressure (one standard atmosphere)
- Court's construction: combination of refrigerant components in the refrigerant composition that are neither liquid nor solid.

The term "refrigerant gas" appears in claims 21, 26, and 31 of the '179 Patent; claims one, nine, and 17 of the '706 patent; and claims one, five, six, seven, 11, 13, 14, 16, and 18 of the '949 Patent. For example, Claim 31 of the '179 Patent provides:

---

[2] The parties initial and revised joint claim construction statements designated "apparatus designed for use with a chlorodifluoromethane refrigerant" as a disputed claim term. This term appears in claims 21 and 26 of the '179 patent, claims one and nine of the '706 patent, and claims one and seven of the '949 patent. In the parties' joint claim construction statements, they agreed that "chlorodifluoromethane refrigerant" should be construed as "R-22", but they disputed the term "apparatus." Subsequently at hearing, the parties agreed to construe the term "apparatus" as "refrigeration equipment, air-conditioning equipment, and HVAC equipment." The court adopted the parties' construction.

> A refrigerant composition comprising a combination of <u>refrigerant gases</u>, the <u>refrigerant gases</u> consisting of a blend of tetrafluoroethane and pentafluoroethane, the ratio of the tetrafluoroethane to the pentafluoroethane being selected such that the blend exhibits a dew point at about −32° F. or a bubble point at about −41.5° F. at about one standard atmosphere of pressure, wherein in the substitute refrigerant said pentafluoroethane is present in an amount of 59% to 57% by weight and said tetrafluoroethane is present in an amount of 41% to 43% by weight of the combined weight of the pentafluoroethane and tetrafluoroethane on the basis of the combined weights of said pentafluoroethane and said tetrafluoroethane totaling 100%, and wherein the tetrafluoroethane is 1,1,1,2-tetrafluoroethane.

('179 patent (DE 153-7) col. 13, l. 10-col. 14, l. 3) (emphasis added). Likewise, Claim one of '706 Patent states:

> In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change, the refrigerant composition comprising a combination of <u>refrigerant gases</u>, said <u>refrigerant gases</u> consisting of a blend of tetrafluoroethane and pentafluoroethane, the ratio of the tetrafluoroethane to the pentafluoroethane being selected such that the blend exhibits a dew point at about −32° F. or a bubble point at about −41.5°F., wherein the refrigerant composition further comprises non-refrigerant gas components, said non-refrigerant gas components including a lubricating oil, wherein the lubricating oil is present up to about 20% by weight of the <u>refrigerant gases</u> and is soluble in chlorodifluoromethane, tetrafluoroethane and pentafluoroethane wherein the lubricating oil is selected from the group consisting of napthenic based lubricants and polyol ester.

('706 patent (DE 153-3) col. 9, l. 54-col. 10, l. 4) (emphasis added). Finally, Claim one of '949 Patent provides:

> In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change, the refrigerant composition comprising a combination of <u>refrigerant gases</u>, said <u>refrigerant gases</u> consisting of a blend of tetrafluoroethane and pentafluoroethane, wherein in the substitute refrigerant said pentafluoroethane is present in an amount of 59% to 57% by weight and said tetrafluoroethane is present in an amount of 41% to 43% by weight on the basis of the combined weights of said pentafluoroethane and said tetrafluoroethane totaling 100%, and wherein said tetrafluoroethane is 1,1,1,2-tetraluoroethane.

('949 patent (DE 153-10) col. 10-ll. 22-35) (emphasis added).

The plain language of the term, and the context in which it appears, supports the RMS parties' proposed construction of "refrigerant gas" as a "combination of refrigerant components in the refrigerant composition." This proposed construction is consistent with the language of the claims, which distinguishes between components that are refrigerants and those that are not, both of which exist in the overall refrigerant composition. (See, e.g., '706 patent (DE 153-3) col. 9, ll. 59-65) ("comprising a combination of <u>refrigerant gases</u> . . . wherein the refrigerant composition further comprises <u>non-refrigerant gas components</u>"). However, this proposed construction reads the "gas" limitation out of the claims, contravening the principle that claims must be "interpreted with an eye toward giving effect to all terms in the claim." <u>Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP</u>, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citations omitted). Accordingly, to give effect to the term "gas", the court adopts part of the Dynatemp parties' proposed construction of "refrigerant gas", particularly the phrase "neither liquid nor solid" and adds it to the end of RMS parties' proposed construction, as follows: combination of refrigerant components in the refrigerant composition that are <u>neither liquid nor solid</u>.

Contrary to the remainder of Dynatemp parties' proposed construction, however, the claims do not require the additional limitation which the Dynatemp parties import into the term: "at standard temperature (68 °F) and pressure (one standard atmosphere)." (DE 161-2). Nothing in the language of the claim terms or specification requires this limitation, and importantly, "[t]he patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." <u>Thorner v. Sony Comput. Entm't Am. LLC</u>, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

Nevertheless, the Dynatemp parties suggest that statements in the prosecution history of a parent patent application support their proposed limitation. In particular, the Dynatemp parties cite

an excerpt of the parent patent application, which references the "applicants' claim packaging of lubricant with the recited refrigerant gases prior to installation in refrigeration equipment." (Applicant Remarks (DE 165-9) at 5) (emphasis added). The Dynatemp parties argue that this statement reveals that whether a refrigerant is a "refrigerant gas" must be determined from its state outside of a refrigeration system.

However, the claims and specification of the patents focus on the refrigerant properties and phase changes within the refrigeration system. (See, e.g., ('706 patent (DE 153-3) col. 9, ll. 55-59) ("In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change, the refrigerant composition comprising a combination of refrigerant gases. . ." (emphasis added)). The parties' agreed upon construction of "refrigerant" reflects this internal focus as well. (See Agreed upon Proposed Constructions (DE 161-1) at 2) (construing "refrigerant" as a "substance used in a refrigeration system that, after compression in the system's compressor, gives off heat as it changes from gas to liquid in the condenser and after injection into the evaporator, absorbs heat as it changes from liquid to gas before it is returned to the compressor" (emphasis added)). Moreover, the mere fact that refrigerant gases are packaged with lubricants outside of the refrigeration system does not require them to be gases at standard temperature and pressure. The Dynatemp parties concede as much in briefing. (See Mem. (DE 164) at 11) ("The intrinsic record thus dictates that whether a refrigerant is a 'refrigerant gas' is to be determined from its state outside of a refrigeration system, but it does not explicitly define the specific conditions under which that determination is to be made." (emphasis in original)).

Instead, to support the specific conditions of standard temperature (68°F) and pressure (one standard atmosphere), the Dynatemp parties rely upon extrinsic evidence. In particular, they cite the

12

Air Conditioning, Heating, and Refrigeration Institute's AHRI Standard 700, which provides handling instructions for sampling liquid refrigerants with boiling points near or above room temperature, (see exhibit 20 (DE 165-20)), and the Oxford Dictionary of Mechanical Engineering, which explains that standard temperature and pressure refers to any number of reference conditions for experimental measurements, generally close to one atmosphere and 32°F to 68°F, (see exhibit 12 (DE 165-12)). The Federal Circuit has viewed this type of evidence "in general as less reliable than the patent and its prosecution history in determining how to read claim terms." Phillips, 415 F.3d at 1318. Indeed, "there is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance . . . each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff." Id. at 1319.

Here, Dynatemp parties' arguments, and extrinsic evidence cited therein, are not helpful, where they focus on the properties of refrigerants separately, and in isolation, whereas the language of the claims and specification explains that a _blend_ or _mix_ of refrigerant gases exhibits unique properties, not the individual components. (See '706 patent (DE 153-3) col. 1, ll. 17-22) ("[T]he present invention relates to an improved refrigerant composition, method and apparatus for refrigeration wherein two non-Refrigerant R-22 refrigerants are mixed in a defined ratio such that _the temperature-pressure relationship of the mix_ approximates that of Refrigerant R-22" (emphasis added)); (see id. col. 9, ll. 58-64) ("[T]he refrigerant composition comprising a _combination_ of refrigerant gases, said refrigerant gases consisting of a _blend_ of tetrafluoroethane [R-134a] and pentafluoroethane [R-125], the ratio of the tetrafluoroethane to the pentafluoroethane being selected such that the _blend_ exhibits a dew point at about -32F or a bubble point at about -41.5F." (emphasis added)). This is problematic because "heavy reliance on the dictionary divorced from the intrinsic

13

evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Phillips, 415 F.3d at 1321. Because the Dynatemp parties' arguments and extrinsic evidence cited therein, in support of the additional temperature and pressure limitation, do not take into account adequately the language and context of the term in the claims and specification, the court does not adopt this part of the Dynatemp parties' proposed construction for the term "refrigerant gas."

## CONCLUSION

The court has construed the disputed claim term as set forth herein. The RMS parties' motion to strike (DE 166) is DENIED. Pursuant to section (D)(2) of the court's October 23, 2020, order, the parties are DIRECTED to file within 14 days of the date of this order a jointly proposed order, setting forth case management deadlines to govern this case going forward.

SO ORDERED, this the 17th day of September, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge