IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-142-FL

| | | |
|---|---|---|
| DYNATEMP INTERNATIONAL, INC.; FLUOROFUSION SPECIALTY CHEMICALS, INC.; HAROLD B. KIVLAN, IV; WILLIAM GRESHAM; and DAVID COUCHOT, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| R421A, LLC; RMS OF GEORGIA, LLC, d/b/a Choice Refrigerants; KENNETH M. PONDER; and LENZ SALES & DISTRIBUTING, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs' motion for clarification or reconsideration of the court's September 17, 2021, claim construction order. (DE 214). Also before the court is RMS of Georgia, LLC ("RMS"); R421A, LLC; and Kenneth M. Ponder's ("Ponder") (collectively, the "RMS parties") motion to strike the motion for reconsideration and all extrinsic evidence submitted therewith, (DE 237), plaintiffs' motion for leave to file amended counterclaims and affirmative defenses, (DE 239), the RMS parties' motion for sanctions for the destruction of evidence, (DE 269), and plaintiffs' motion for leave to file surreply in relation to the RMS parties' motion to strike, (DE 292). Also requiring address are motions to seal. (DE 234, 252, 270, 283, 293). The motions have been briefed fully and in this posture are ripe for ruling.

# BACKGROUND

The court recounts procedural history pertinent to the issues now under consideration in this consolidated case concerning refrigerant products.

Plaintiffs Dynatemp International, Inc. ("Dynatemp") and Fluorofusion Specialty Chemicals, Inc. ("Fluorofusion") filed their operative second amended complaint April 14, 2021, asserting jointly claims against defendants for false advertising, common law unfair competition, and unfair and deceptive trade practices. Dynatemp solely also asserts claims against defendants for defamation, tortious interference with prospective economic advantage, breach of contract, and unjust enrichment.

On April 22, 2021, defendants RMS and R421A, LLC filed their operative second amended complaint,[1] asserting claims of patent infringement, induced infringement, and contributory infringement against plaintiffs. RMS and R421A, LLC claim that the plaintiffs market a refrigerant product, Dynatemp 421A, that infringes upon three patents owned by R421A, U.S. Patent No. 9,982,179; U.S. Patent No. 8,197,706; U.S. Patent No. 10,703,949 (the "'179 patent", the "'706 patent", the "'949 patent", collectively, "the patents").

The patents, each entitled "Refrigerant with Lubricating Oil for Replacement of R22 Refrigerant," are directed to an apparatus and method for substituting ozone layer-damaging chlorodifluoromethane with two less environmentally damaging refrigerants, pentafluoroethane (R-125) and tetrafluoroethane (R-134a), in chlorodifluoromethane-based-air-cooling systems. The patents share virtually identical specifications, and the claims of the patents include many overlapping claim terms.

---

[1]     Their original complaint was filed in the separate action, commenced April 8, 2020, as 421A LLC v. Dynatemp International, Inc. et al., No. 5:20-CV-147-FL (E.D.N.C.), then consolidated October 23, 2020. For purposes of differentiating the opposing parties to this order, the court retains the party designations as specified in the caption of this order, recognizing that the parties' designations per the operative complaints will differ.

On August 31, 2021, after briefing on claim construction narrowed disputed claim terms to two, the court held hearing on claim construction and on then pending motion to strike. At hearing, the parties reached agreement on one disputed claim term, leaving only one term for construction: "refrigerant gases." The court entered order construing that term, and denying motion to strike, September 17, 2021 (DE 189) (hereinafter, the court's "claim construction order").[2] The court then entered amended case management order, which deadlines subsequently were extended to facilitate the parties' engagement in court-hosted settlement conferences held May 25 and 26, 2022, and continued telephonically June 7, 2022.

Where settlement discussions reached an impasse, parties jointly moved August 9, 2022, to again extend case management deadlines, requesting that opening expert disclosures be made November 18, 2022, discovery complete March 17, 2023, and dispositive motions filed April 19, 2023.

September 6, 2022, plaintiffs filed the instant motion pursuant to Civil Rule of Federal Procedure 54(b) requesting the court clarify or alternatively reconsider its claim construction order, which by then had governed the case for nearly a year. Plaintiffs rely upon declaration by their counsel, Jon R. Trembath, and exhibits comprised substantially of materials from myriad organizations, engaged in differing capacities in the refrigeration industry, purporting to establish standard conditions used to distinguish between refrigerant gases and liquids.

---

[2] The claim construction order is published as Dynatemp Int'l, Inc. v. R421A, LLC, 560 F. Supp. 3d 969 (E.D.N.C. 2021). In this order, references to the claim construction order are to the page numbers appearing on the face of the order filed on the court's docket and not in its published form.

September 29, 2022, the RMS parties filed the instant motion to strike plaintiffs' motion for clarification or reconsideration for failure to comply with Local Civil Rules 304.4 and 304.5.

Plaintiffs then moved pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure for leave to file amended counterclaims and affirmative defenses to assert inequitable conduct by defendant Ponder, one of the named inventors of the patents-in-suit, and Todd Deveau ("Deveau"), who served as Ponder's patent prosecution counsel, in the prosecution of the patents in issue. Plaintiffs rely upon 92 exhibits, in addition to a memorandum filed with 50 exhibits in support thereof, covering the prosecution history and appeals of the patents, and RMS internal emails concerning, discovery from the instant action, correspondence leading up to the month prior to filing as well as the transcript from the deposition of defendant Ponder, conducted May 20, 2022. RMS parties responded in opposition.

RMS parties subsequently filed the instant motion for sanctions against plaintiffs for the alleged destruction of all samples of the accused product, Dynatemp 421A, in their possession. RMS parties rely upon plaintiffs' discovery responses and objections, email and letter correspondence between opposing counsel and between plaintiffs, as well as a photograph of Dynatemp 421A cartons in a dumpster. Plaintiffs responded in opposition relying upon declarations and exhibits thereto by plaintiff Harold B. Kivlan ("Kivlan"), the chief executive officer and financial officer of plaintiff Dynatemp and officer of Fluorofusion; William Gresham ("Gresham"), vice president of Dynatemp; and Stefan Elbel, Ph. D., retained by plaintiffs as a technical expert in patent infringement.

January 29, 2023, RMS parties filed a supplemental memorandum in support of their opposition to plaintiffs' motion for clarification or reconsideration. Plaintiffs filed the instant motion, pursuant to Local Civil Rule 1.1, for leave to file surreply to RMS parties' supplemental memorandum.

On March 16, 2023, the court granted the RMS parties' motion to modify case management order, to suspend the time for the RMS parties to respond to expert reports regarding the purported inequitable conduct underlying plaintiffs' pending motion for leave to file amended counterclaims and affirmative defenses. The court also of its own initiative stayed all other discovery deadlines pending resolution of the instant motions.

## COURT'S DISCUSSION

A.     Motion for Clarification or Reconsideration and Motion to Strike the Same

In its claim construction order, the court construed the term "refrigerant gas" to mean a "combination of refrigerant components in the refrigerant composition that are neither liquid nor solid." (Claim Construction Order (DE 189) at 9). That construction included parts of the parties' respective proposed constructions of the term, with plaintiffs proposing "refrigerants that are neither liquid nor solid at standard temperature (68°) and pressure (one standard atmosphere)," and the RMS parties' proposing a "combination of refrigerant components in the refrigerant composition." (Id. (emphasis added).

Plaintiffs now contend in their motion to reconsider that the court's construction was erroneous in two material respects, and that the court's construction should be revised to reflect its originally proposed construction, pursuant to Federal Rule of Civil Procedure 54(b). The court agrees in part with plaintiffs that the court erred in its prior construction; however, upon reconsideration, the court rejects plaintiff's proposed construction and construes the disputed terms in a manner favoring the RMS parties, for the reasons set forth below. Accordingly, the court grants in part and denies in part plaintiffs' motion for reconsideration.

1.    Standard of Review

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b). Thus, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment.  Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003).[3]  Resolution of a motion to reconsider is "committed to the discretion of the district court," bearing in mind that "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law."  Id.

2.    Analysis

The court's prior construction of "refrigerant gases" was in error for two reasons.  First, although the parties proposed for construction the term "refrigerant gases," (DE 161-2 at 2 (emphasis added), the court construed "refrigerant gas," (DE 189 at 9), which term does not appear in the patent claims.  Second, for the reasons set forth below, the plain language of the patent and the context of "refrigerant gases" in the claims compels a construction consistent with that proposed by the RMS parties.

In determining the construction of the term "refrigerant gases," the court primarily must consider the "intrinsic record," comprised of "the claims, the specification, and the prosecution history."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc); Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005).  Secondarily, the court may consider "extrinsic evidence" in the form of expert testimony, technical information, and dictionaries.  Phillips,

---

[3]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

415 F.3d at 1317. "[T]he context in which a term is used in the asserted claim can be highly instructive." Id. at 1314.

The term "refrigerant gas" appears in three claims of the '179 patent, two claims of the '706 patent; and five claims of the '949 patent. As representative examples, claim 31 of the '179 patent provides:

> A *refrigerant composition* comprising a combination of <u>refrigerant gases</u>, the <u>refrigerant gases</u> *consisting of* a blend of tetrafluoroethane and pentafluoroethane, the ratio of the tetrafluoroethane to the pentafluoroethane being selected such that the blend exhibits a dew point at about −32° F. or a bubble point at about −41.5° F. at about one standard atmosphere of pressure, wherein in the substitute refrigerant said pentafluoroethane is present in an amount of 59% to 57% by weight and said tetrafluoroethane is present in an amount of 41% to 43% by weight of the combined weight of the pentafluoroethane and tetrafluoroethane on the basis of the combined weights of said pentafluoroethane and said tetrafluoroethane totaling 100%, and wherein the tetrafluoroethane is 1,1,1,2-tetrafluoroethane.

('179 patent (DE 20-1) 13:10-22 (italics and underlining emphasis added)). Likewise, claim one of '706 patent states:

> In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change, the *refrigerant composition* comprising a combination of <u>refrigerant gases</u>, said <u>refrigerant gases</u> *consisting of* a blend of tetrafluoroethane and pentafluoroethane, the ratio of the tetrafluoroethane to the pentafluoroethane being selected such that the blend exhibits a dew point at about −32° F. or a bubble point at about −41.5°F., wherein the refrigerant composition further comprises non-refrigerant gas components, said non-refrigerant gas components including a lubricating oil, wherein the lubricating oil is present up to about 20% by weight of the <u>refrigerant gases</u> and is soluble in chlorodifluoromethane, tetrafluoroethane and pentafluoroethane wherein the lubricating oil is selected from the group consisting of napthenic based lubricants and polyol ester.

('706 patent (DE 20-2) 9:55-10:4 (emphasis added)). Finally, claim one of '949 Patent provides:

> In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change, the *refrigerant composition* comprising a combination of <u>refrigerant gases</u>, said <u>refrigerant gases</u> *consisting of* a blend of tetrafluoroethane and pentafluoroethane, wherein in the substitute refrigerant said pentafluoroethane is present in an amount of 59% to 57% by weight and said

7

tetrafluoroethane is present in an amount of 41% to 43% by weight on the basis of the combined weights of said pentafluoroethane and said tetrafluoroethane totaling 100%, and wherein said tetrafluoroethane is 1,1,1,2-tetraluoroethane.

('949 patent (DE 20-3) 10:23-35 (emphasis added)).

The context of the term in the patents thus instructs a specific "refrigerant composition," shown in italics in the examples above, comprised in part of "refrigerant gases." Refrigerant gases in turn are "consisting of," a term of patent convention meaning that the claimed invention contains only what is expressly set forth in the claim, Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004), "a blend of tetrafluoroethane and pentafluoroethane." (e.g., '949 patent (DE 20-3) 10:23-35). The patents dictate the ratios at which these refrigerant gases are blended, and the physical properties manifesting, including a resulting dew point of −32° F. and boiling point of −41.5° F. "[T]he refrigerant composition further comprises nonrefrigerant gas components, said non-refrigerant gas components including a lubricating oil." (E.g., '179 patent (DE 30-1) at 10:21-23) (emphasis added).

In sum, read in concert, the claims instruct that "refrigerant gases," consisting of "a blend of tetrafluoroethane and pentafluoroethane," together with "nonrefrigerant gas components," "including a lubricating oil," form a "refrigerant composition." According to the specification, the physical properties of that "refrigerant composition" mimic the profile of chlorodifluoromethane, permitting it to supplement and replace chlorodifluoromethane as a more environmentally friendly alternative. (See, e.g., '179 patent (DE 30-1) at 1:15-36.

In effect, the patents expressly provide the proper construction of refrigerant gases. As the RMS parties argued in their claim construction briefs and at hearing, refrigerant gases are a combination of refrigerant components, specifically a blend of tetrafluoroethane and pentafluoroethane, that form part of the refrigerant composition, with the other part of that composition consisting of "nonrefrigerant gas components" such as "lubricating oil."

The court in its initial order expressed concern that such construction reads the "gases" limitation out of the claims, contravening the principle that claims must be "interpreted with an eye toward giving effect to all terms in the claim." Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1257 (Fed. Cir. 2010). Upon reconsideration, however, and upon further review of the claims in issue, it does not. Context reveals that "gases" distinguishes the specific refrigerants identified, "tetrafluoroethane and pentafluoroethane," from the non-refrigerant gas components, including "lubricating oil," upon which a conversion to a gaseous state the "vapor compression cycle," (Claim Construction Transcript (DE 190) at 9:13-18), does not contemplate. The vapor compression cycle, the general mechanics of which are undisputed, is shown below:



(RMS Parties' Claim Construction Slides (DE 185) at 5; see Pl.s' Notice of Manual of Tutorial (DE 187) (depicting the same principles in video)).

As the line dividing the image horizontally denotes, refrigerants vaporize into a gas, illustrated in the upper half of the image as dots, and condense into a liquid, depicted in the lower half in solid color, in the vapor compression cycle. Indeed, it is the phase change of the refrigerants from a liquid to a gas, thereby absorbing heat within the refrigerated space, and then from a gas to a liquid,

9

displacing that heat elsewhere, by which a refrigeration system works. (See Claim Construction Transcript (DE 190) at 12:5-25, 13:1-25, 14:1-3). By comparison, the vapor compression cycle does not similarly rely upon phase change by the "non-refrigerant gas components including a lubricating oil." The specification reveals that those components serve a different function, one of lubrication. (See, e.g., '179 patent (DE 30-1) at 1:30-34 ("A further particularity of the instant invention relates to an improved method and apparatus for refrigeration wherein refrigerant mixture is mixed with a soluble lubricating oil to provide lubrication to the apparatus.")). The preferred embodiment, for instance, instructs that ROYCO® lubricants be used, which contain acrylic polymer which in turn "can help film formation, and the ability of the lubricant to coat metal and soft parts and stay in place." (See, e.g., id. at 4:46-51, 9:14-18 (emphasis added)). A construction of "refrigerant gases" that incorporates this distinction between the refrigerant components and non-refrigerant components of the refrigeration composition gives effect to the term "gases."

Consistent with that distinction, pursuant to the plain language of the asserted claims the term "refrigerant gases" is properly construed as "a combination of refrigerant components, specifically a blend of tetrafluoroethane and pentafluoroethane, that form part of the refrigerant composition." That is the construction the court on reconsideration adopts.

Contrary to arguments raised by plaintiffs in support of their proposed construction, which are identical to those proposed at claim construction hearing, this construction does not conflate "refrigerants" and "refrigerant gases." The parties agreed prior to hearing on claim construction to construe "refrigerant" as a "substance used in a refrigeration system that, after compression in the system's compressor, gives off heat as it changes from gas to liquid in the condenser and after injection into the evaporator, absorbs heat as it changes from liquid to gas before it is returned to the compressor." (See Agreed upon Proposed Constructions (DE 161-1) at 2 (emphasis added)). Thus,

10

the term "refrigerant" in the instant patents bears a broad and generalized meaning, including within its breadth a multitude of substances used in refrigeration systems that undergo a phase change from a liquid to a gas and a gas to a liquid, thereby facilitating refrigeration.

"Refrigerant gases" is a term used in the patent to identify specific refrigerants falling within that broader umbrella category—it is a blend of tetrafluoroethane and pentafluoroethane with a temperature and pressure profile resembling that of chlorodifluoromethane. (See, e.g., Patent '179 (DE 20-1) at 10:2-5 ("In an apparatus designed for use with chlorodifluoromethane refrigerant, the improvement comprising substituting the chlorodifluoromethane with a refrigerant composition designed to achieve a phase change[.]"). Accordingly, under the court's construction, "refrigerant gases" is distinguishable from the term "refrigerant" in the way that a square can be distinguished from a rectangle—so construed refrigerant gases are refrigerants, but not all refrigerants are refrigerant gases.

For the reasons already provided in the court's claim construction order, the court again declines to import the specific conditions of standard temperature (68°F) and pressure (one standard atmosphere) as proposed by plaintiffs in their motion for reconsideration, based upon extrinsic evidence appended. (See, e.g., Claim Construction Order (DE 189) at 13-14). "It is the claims that define the metes and bounds of the patentee's invention," and nothing within the language of the claims, or specification, require such limitation. Thorner v. Sony Computer Ent. Am. LLC, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

In sum, plaintiffs' motion for reconsideration of the court's prior claim construction order is granted in part. The court declines, however, to adopt the construction they propose, and that part of

the motion accordingly is denied. The court's construction of "refrigerant gases" is "a combination of refrigerant components, specifically a blend of tetrafluoroethane and pentafluoroethane, that form part of the refrigerant composition." This construction is consistent with the construction proposed by the RMS parties at claim construction hearing.

Where the court has relied only upon the record created as part of the claim construction process, and not upon the extrinsic evidence now submitted by plaintiffs in support of their motion for reconsideration, the court terminates as moot the RMS parties' motion to strike. In addition, where the court reached its decision without consideration of the RMS parties' supplemental memorandum in support of their opposition to plaintiffs' motion for reconsideration, the court also terminates as moot plaintiffs' corresponding motion for leave to file surreply.

B.    Motion for Leave to File Amended Counterclaims and Affirmative Defenses

Plaintiffs move to amend their counterclaims and affirmative defenses to assert inequitable conduct in the prosecution of the patents in issue, implicating Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure. RMS parties in opposition argue that the proposed amendments are untimely, futile, and prejudicial. The court disagrees.

1.    Good Cause Under Rule 16

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard [of Federal Rule of Civil Procedure 16] must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).[4] Under Rule 16, a scheduling

---

[4]    The court applies the law of the Fourth Circuit "with respect to nonpatent issues" and Federal Circuit law with respect to "patent law issues." Phonometrics, Inc. v. Hosp. Franchise Sys., Inc., 203 F.3d 790, 793 (Fed. Cir. 2000) ("In reviewing district court judgments in patent cases, this court applies its own law on patent law issues, but with respect to nonpatent issues it generally applies the law of the circuit in which the district court sits."). In distinguishing between patent and nonpatent issues, courts look to whether the matter is "intimately involved with the substance of the patent laws." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008); see id. ("[W]e apply our own law to all of the claims where the question of infringement is a critical factor in determining liability under the non-patent claims.").

Case 5:20-cv-00142-FL    Document 300    Filed 05/12/23    Page 12 of 25

order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). If the Rule 16 good cause standard is met, the court then proceeds to consider whether the motion to amend should be granted under Rule 15. Cook v. Howard, 484 F. App'x 805, 814 (4th Cir. 2012).

Although the United States Court of Appeals for the Fourth Circuit has not addressed in published opinion all the factors guiding the good cause analysis in this context, it has recognized in unpublished opinions that "Rule 16(b)' s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel County, 182 F. App'x 156, 162 (4th Cir. 2006). "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and . . . the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." Cook, 484 F. App'x at 815 (alterations in original). The burden is on the "movant . . . [to] demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007); see also Montgomery, 182 F. App'x at 162 (inquiring into whether the moving party had a "good reason for [its] tardy submission of the motion to amend").

Plaintiffs contend that in the course of discovery, including deposition of Ponder on May 20, 2022, and analysis of over 47,000 pages of e-mail produced by the RMS Parties in May and June 2022, they learned Ponder and Deveau made intentional and material misrepresentations resulting in issuance of the patents. "[S]ensitive to the gravity of an inequitable conduct claim and mindful of the heavy pleading burden that goes with it," plaintiffs sought to substantiate their claims by seeking follow-up discovery from Deveau and James G. Calm ("Calm"), who Ponder and Deveau allegedly engaged as a refrigerant consultant during the prosecution of the '179 patent. (Dynatemp Reply (DE

13

273) at 7). RMS parties declined to present Deveau for deposition, citing the <u>Shelton</u> doctrine,[5] and September 20, 2022, plaintiffs issued a subpoena to Deveau's law firm for records relating to their claims of misrepresentation. Plaintiffs also sought records from Calm and requested availability for deposition in September 2022. As of the date of the filing of the instant motion, October 1, 2022, a date for Calm's deposition still had not been set.

Regarding the pleading burden to which plaintiffs allude, a party seeking to prove inequitable conduct must show, by clear and convincing evidence, that the patent applicant acted with the specific intent to deceive the Patent and Trademark Office ("PTO") and that the applicant's actions were material, meaning they resulted in the issuance of a patent that otherwise would not have issued. <u>Therasense, Inc. v. Becton, Dickinson & Co.</u>, 649 F.3d 1276, 1287 (Fed. Cir. 2011). As a claim of inequitable conduct sounds in fraud, a patent challenger seeking to raise inequitable conduct as a defense or a counterclaim must meet the heightened standard of pleading set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); <u>see</u> <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." <u>Exergen</u>, 575 F.3d at 1328. The pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." <u>Id.</u> at 1328-29.

---

[5]     The <u>Shelton</u> doctrine arises out of <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323 (8th Cir. 1986) and protects lawyers from depositions and other discovery in actions in which they appear as counsel.

In light of the heightened standards of pleading and proof for inequitable conduct claims, district courts have routinely found it reasonable for patent challengers to delay raising allegations of inequitable conduct until substantial discovery has been conducted enabling the challenger to confirm its suspicions. See, e.g., Birchwood Lab'ys, Inc. v. Battenfeld Techs., Inc., 762 F. Supp. 2d 1152, 1155 (D. Minn. 2011) (collecting cases); Enzo Life Sciences, Inc. v. Digene Corp., 270 F. Supp. 2d 484, 487-88 (D. Del. 2003); Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 537, 538–39 (M.D.N.C. 1999); Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1247 (N. D. Cal. 1996). These holdings are consistent with warning by the Federal Circuit that premature allegations of inequitable conduct are "an absolute plague" harmful to the "rightful administration of justice." Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988).

Considered in the instant context, where a claim of inequitable conduct requires proof of specific intent to deceive on the part of the applicants or their representatives, it was not unreasonable for plaintiffs to postpone raising allegations of inequitable conduct until they had pursued depositions of Ponder, Deveau, and Calm. See, e.g., Rhone-Poulenc Agro S.A., 73 F.Supp.2d at 538-39 (concluding delay in filing motion to amend was not dilatory where the party postponed filing until after deposing "important fact witnesses regarding [] the allegations upon which the inequitable conduct claim relie[d]"). Rather, by delaying their motion, plaintiffs "appropriately fulfilled [their] obligation to investigate [their] claim[s] thoroughly prior to making [them]." Id. at 539.

The RMS parties in opposition primarily contend that the majority of the evidence upon which plaintiffs' motion to amend now rests was publicly available or otherwise within their possession months or even years before the filing of the instant motion. "Simply because a party knows of some facts in support of its claim before the deadline[, however,] does not mean that a claim subject to the

heightened pleading requirements of Rule 9(b) must be asserted at that time." Birchwood Lab'ys, Inc., 762 F. Supp. 2d at 1155 (emphasis in original); see Enzo, 270 F.Supp.2d at 489 (concluding that although facts underlying inequitable conduct claims were available to defendant in the public prosecution history of the patent, defendant "was prudent and possibly required to confirm the factual allegations through discovery" because the Rule 9(b) "pleading with particularity" requirement was implicated). The RMS parties' argument also "misconstrues the [relevant] inquiry by focusing on whether material information actually was obtained" in subsequent discovery, rather than "whether it was reasonable for [plaintiffs] to expect to obtain clarifying information regarding the claim [in subsequent discovery], and therefore to wait until after [it was completed] to file [their] Motion." Rhone-Poulenc Agro S.A., 73 F. Supp. 2d at 539. Here, for the reasons aforementioned, it was reasonable.

The court concludes plaintiffs acted diligently and the time of their filing is justified and proceeds to consideration of the motion under Rule 15.

2.     Futility and Prejudice Under Rule 15

Under Rule 15 "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison, 535 F.3d at 298; see generally Foman v. Davis, 371 U.S. 178, 182 (1962). With respect to futility, the court may deny leave to amend "if the proposed amended [pleading] fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

As heretofore provided, to adequately plead inequitable conduct plaintiffs must allege: "(1) an individual associated with the filing and prosecution of [the] patent applications[] made an

affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen, 575 F.3d at 1327 n.3. To satisfy Rule 9, plaintiffs also must identify the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1327.

On review of the proposed amended counterclaims and affirmative defenses, plaintiffs have pleaded inequitable conduct with requisite particularity, and the court cannot conclude at this time the amendment would be futile. Plaintiffs for instance allege Ponder and Deveau:

a. Falsely stated material facts to induce the PTO to revive an application after it had been abandoned for more than two years, (Proposed Amended Compl. (DE 240-1) ¶¶ 136-75);
b. Falsely represented that Ponder's claimed refrigerant composition exhibited "unexpected results" in order to overcome the Examiner's final rejections of proposed claims as obvious over a prior art reference known as "Takigawa," (id. ¶¶ 176-227);
c. Failed to correct the Examiner's misapprehension of the teachings of Takigawa, (id. ¶¶ 243-50);
d. Falsely characterized the teachings of a prior art reference known as "Powell" to avoid rejection on obviousness grounds (id. ¶¶ 107-19).

The facts supporting these allegations of misrepresentation, accepted as true and construed in the light most favorable to plaintiffs, state claims for inequitable conduct that are plausible on their face.

In opposition, the RMS parties contend plaintiffs' proposed amended counterclaim regarding "unexpected results" fails to meet the "but-for" materiality standard necessary to state a claim for inequitable conduct. "[B]ut-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct." Therasense, Inc., 649 F.3d at 1292. "Information is material if a reasonable examiner would have considered it important to the patentability of a claim." Exergen, 575 F.3d at 1329. In assessing materiality, "the court must determine whether the PTO would have allowed the

17

claim if it had been aware" of the material misrepresentation or omission. Therasense, 649 F.3d at 1291.

There exists an exception, however, "in cases of affirmative egregious misconduct." Id. at 1292. "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit," the misconduct is material without allegation of but-for materiality. Id. Here, plaintiffs have alleged the misrepresentations regarding "unexpected results" were made in false declarations by Ponder. (See DE 240 ¶¶ 183-210, 232, 239-241). "[T]here is no room to argue that submission of false [declarations] is not material." Rohm & Haas Co. v. Crystal Chem. Co., 722 F.2d 1556, 1571 (Fed. Cir. 1983). "After all, a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." Therasense, Inc., 649 F.3d at 1292.

The RMS parties additionally contend the proposed amended counterclaims based upon Deveau's arguments regarding the Powell and Takigawa cannot support viable claims of inequitable conduct. As a general matter, "a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct." Rothman v. Target Corp., 556 F.3d 1310, 1328-29 (Fed. Cir. 2009). "[L]egitimate attorney argument[s]" accordingly are not grounds for claims of inequitable conduct. Id. at 1328. Attorney arguments, however, are not insulated from inequitable conduct claims where they are alleged to have included demonstrably false statements. See Young v. Lumenis, Inc., 492 F.3d 1336, 1349 (Fed. Cir. 2007). Accepting plaintiffs' allegations as true, Deveau affirmatively and intentionally made false statements unprotected by the attorney argument safe harbor.

Finally, with respect to prejudice under Rule 15, plaintiffs' allegations are based upon acts and omissions by Ponder and Deveau. Thus, "very little—if any—new discovery is required in order

for [the RMS parties] to rebut [plaintiffs'] assertions." Rhone-Poulenc Agro S.A., 73 F. Supp. 2d at 539; see Birchwood Lab'ys, Inc., 762 F. Supp. 2d at 1156 (accord). Cf. Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir.1990) (holding that no prejudice to opposing party occurred when defendant was allowed to add a defense of fraud, because the claim "was based entirely on documents taken from plaintiff's own records, and no additional discovery would have been necessary, nor would additional third-party witnesses have been required to testify on the issue").

Accordingly, plaintiffs' motion to amend their counterclaims and affirmative defenses is granted. Where the amended counterclaims and affirmative defenses include information the RMS parties contend is competitively sensitive, both sides shall confer and jointly propose a redacted version of the amended counterclaims and affirmative defenses within 30 days from the date of this order. Plaintiffs also shall file an unredacted version under seal by that same time. Opposing parties may file an answer thereto within 14 days thereafter, pursuant to Fed. R. Civ. P. 15(a)(3).

C.    Motion for Spoliation Sanctions

It is undisputed that while this action was pending plaintiffs repurposed their unsold stock of Dynatemp 421A without preserving samples. (RMS Parties' Mem. (DE 262 at 11); Pl. Response (DE 281) at 10 ("[A]ll of the unsold cylinders in the Dynatemp Parties' possession were repurposed[.]")). On this basis, the RMS parties move for appropriate sanctions, including immediate production of all information and documents relating to the destruction of samples of Dynatemp 421A; a permissive adverse inference instruction related to plaintiffs' claims for false advertising and unfair competition; a permissive adverse inference instruction related to RMS' claim for willful infringement; and an award of reasonable attorneys' fees and costs.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

19

Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). A court's authority to levy sanctions on a spoliator derives from Rule 37 of the Federal Rules of Civil Procedure and from the court's "inherent power . . . to redress conduct 'which abuses the judicial process.'" Id.; see Fed. R. Civ. P. 37(e) (authorizing sanctions for spoliation of electronically stored information); cf. Fed. R. Civ. P. 37(b)(2) (authorizing sanctions for violations of discovery orders).

"The policy underlying th[e] inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." Silvestri, 271 F.3d at 590. "While a district court has broad discretion in choosing an appropriate sanction for spoliation, the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." Id. "[W]hen imposing spoliation sanctions, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." Id.

The parties agree that plaintiffs violated their duty to preserve material evidence when they repurposed their entire unsold stock of Dynatemp 421A. Plaintiffs have stipulated to the composition of Dynatemp 421A, thereby establishing the facts the RMS parties seek to establish by inspection of samples. Plaintiffs also have procured sealed cylinders of Dynatemp 421A from a third party.

Thus, on the record presently before it, the RMS parties have not demonstrated a need to "level[] the evidentiary playing field" with imposition of sanctions. Silvestri, 271 F.3d at 590; see, e.g., Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79-80 (3d Cir. 1994) (reversing lower court's spoliation sanctions based upon the disassembly of an injury-causing saw in part because the defendant could "inspect[] and test[] multiple saws of the same design").

RMS parties, however, have introduced evidence that plaintiffs declined to respond to requests for production of documents relating to the disposition of unsold Dynatemp 421A and plaintiffs'

efforts to obtain product samples for purposes of discovery, stymieing RMS parties' efforts to prove malintent. RMS parties contend the requested materials are responsive to pending interrogatory numbers 9, 11, 23, and 25, (see Exhibit N (DE 262-16) at 3-4 (email describing the interrogatories)), whereas plaintiffs argue the requested materials are not responsive to any pending interrogatory and, "[m]oreover, the requests are not proportional to the needs of the case," (see Exhibit M (DE 262-15) at 3).

The court is unable to resolve this embedded suggestion of a discovery dispute on the present record. RMS parties' interrogatories themselves are not before the court and there is not a motion to compel responses to the referenced interrogatories pending. The court in its discretion accordingly denies without prejudice the RMS parties' motion as premature. See United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993) ("Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary."). Denial of the RMS parties' motion for sanctions is without prejudice to filing of an appropriately supported renewed motion for sanctions or motion to compel. [6]

D.    Motions to Seal

There are three categories of materials for which sealing is sought, which categories the court addresses in turn below, in accordance with the standards set forth for motions to seal in the court's case management order. (See DE 192 at 5).

In considering a request to seal, the court generally must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment. See

---

[6]    In the event of a discovery dispute related to the issues discussed in the text above, the court dispenses with the requirement, set forth in the court's October 23, 2020, amended case management order of convening a conference with the court prior to either party filing a discovery motion.

Stone v. Univ. of Md., 855 F.2d 178, 180 (4th Cir. 1988).  The common law presumption in favor of access attaches to all judicial records and documents, whereas First Amendment protection is extended to only certain judicial records and documents, including, for example, those filed in connection with a summary judgment motion.  Id.

All exhibits considered below are filed in connection with non-dispositive motions and are subject to the common law presumption of access, which may be overcome "if competing interests outweigh the interest in access."  Stone, 855 F.2d at 180; see Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988) ("Once the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status of being raw fruits of discovery.").

1.      Trembath Declaration Exhibits

The RMS parties move to seal exhibits 12, 20, 21, and 23 to the Trembath declaration, filed in association with plaintiffs' motion for reconsideration, pursuant to Federal Rule of Civil Procedure 79, Local Rules 5.1, 7.1, 79.2.  (DE 234).  Exhibit 12 contains test results regarding the specifications of a product sample designated as "HIGHLY CONFIDENTIAL;" exhibits 20 and 21 are purported RMS purchase orders and packing slips for chemicals, showing quantity ordered and purchase price, marked "CONFIDENTIAL"; and exhibit 23 features tables of RMS's 2019-2020 sales, showing quantity, amount, and percentage of sales, designated as "HIGHLY CONFIDENTIAL."  On review of the exhibits, they contain financial and technical business information that is competitively sensitive.  Public release of the material contained therein is likely to cause RMS harm while having little bearing on any public matters.  Motion to seal the exhibits, (DE 234), filed provisionally under seal at docket entries 228-1, 228-2, 228-3, 228-4, is GRANTED.

2. Motion for Reconsideration Documents

The RMS parties move to seal all documents at docket entries 240 and 246, filed by plaintiffs in support of their motion for reconsideration. (DE 252). The RMS parties contend these entries contain financial and business information and communications RMS deems to be competitively sensitive. The court agrees with respect to docket entry 246 and GRANTS that part of the motion. The court, however, will not as a wholesale matter maintain under seal plaintiffs' proposed amended counterclaims and affirmative defenses, filed at docket entry 240. That part of the motion is accordingly DENIED. As set forth in the conclusion of this order, the parties shall propose a redacted version of the document for consideration by the court. Docket entry 240 shall remain under provisional seal.

Plaintiffs move to seal exhibit A to the RMS parties' supplemental memorandum in support of their opposition to plaintiffs' motion for reconsideration. (DE 293). Exhibit A is a letter by Amy setting forth plaintiffs' non-public business information concerning the composition of Dynatemp 421A and the source for a component of Dynatemp 421A. Plaintiffs propose a version of this letter with this information redacted. The motion, (DE 293), is GRANTED, and the clerk is DIRECTED to seal docket entry 291-1.

3. Motion for Sanctions Documents

Plaintiffs move to seal portions of the RMS parties memorandum of law in support of its motion for sanctions; portions of exhibits A and F to the declaration of Scott P. Amy ("Amy"), counsel to RMS parties, in support of the motion for sanctions; and the entirety of exhibit G to Amy's declaration. (DE 270). Plaintiffs contend exhibits A, F, and G to the Amy declaration, as well as their memorandum in reliance on those exhibits, set forth plaintiffs' non-public business information concerning the composition of Dynatemp 421A, the source for a component of Dynatemp 421A,

Dynatemp's internal work to prepare the Safety Data Sheet for Dynatemp 421A, and the manufacture and sale of Dynatemp 421A. This information plainly would be damaging to plaintiffs, and the proposed redactions of exhibits A, F, and RMS parties' memorandum in support are tailored to protecting that interest. Plaintiffs' motion, (DE 270), accordingly is GRANTED. The clerk is DIRECTED to seal docket entry 262, which currently is on the public docket with insufficient redaction.

Plaintiffs also move to seal exhibit 1 to their response in opposition to RMS parties' motion for sanctions, which includes excerpts from responses by Dynatemp and FluoroFusion to discovery requests by R421A LLC and RMS. (DE 283). Information conveyed includes the composition of Dynatemp 421A and the manufacture and sale of Dynatemp 421A, designated as "HIGHLY CONFIDENTIAL." This motion to seal, (DE 283), is GRANTED for the reasons already provided in relation to such information.

As the instant order does not rely upon sealed materials or otherwise describe those materials in detail, it will be entered on the public docket.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for reconsideration of the court's September 17, 2021, claim construction order, (DE 214), is GRANTED IN PART and DENIED IN PART as set forth herein; the RMS parties' motion to strike the same, (DE 237), and plaintiffs' motion for leave to file surreply, (DE 292), both are TERMINATED AS MOOT; and the court has construed the disputed claim term as set forth herein.

Plaintiffs' motion for leave to file amended counterclaims and affirmative defenses, (DE 239), is GRANTED. Where the amended counterclaims and affirmative defenses include information the RMS parties contend is competitively sensitive, both sides shall confer and jointly propose a

redacted version of the file within **30 days** from the date of this order. Plaintiffs also shall file an unredacted version under seal by that same time. Opposing parties may file an answer thereto within **14 days** thereafter, pursuant to Fed. R. Civ. P. 15(a)(3).

The RMS parties' motion for spoliation sanctions, (DE 269), is DENIED WITHOUT PREJUDICE.

The motions to seal at docket entries 234, 270, 283, and 293 are GRANTED and the motion to seal at 252 is GRANTED IN PART AND DENIED IN PART, as set forth herein.

The court LIFTS the stay of discovery activities imposed by March 16, 2023, text order. Where scheduling deadlines were interrupted by the pending motions, and where additional discovery likely is necessary in light of the court's revised construction of the disputed term, the parties are DIRECTED to file within **14 days** of the date of this order a jointly proposed order, setting forth remaining case management deadlines to govern this case going forward.

SO ORDERED, this the 12th day of May, 2023.

LOUISE W. FLANAGAN
United States District Judge